# CHARLESTON

PHILLIPS *et al. v.* BOARD OF CANVASSERS.

Submitted December 22, 1908.    Decided December 23, 1908.

1. ELECTIONS—*Ballots—Irregularities—Statutory Provisions—Directory.*
    Except in those cases in which statutes, prescribing rules to be observed by voters in the preparation of their ballots are shown to be mandatory by prohibitive terms, inhibiting the counting of the ballots, in case of deviation from the prescribed rules, such statutes are generally held to be directory; and effect must be given to the intent of the voter, if it can be ascertained from the face of the ballot. (p. 716.)

2. SAME.
    Clauses in a statute, prescribing rules for preparation of ballots, saying "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice" and "If the voter marked more names than there are persons to be elected to an office, or, if, for any reason, it is impossible to determine the voter's choice for an office to be filled, his ballot shall not be counted for such office," mandatorily require effect to be given to the intention of the voter, if it can be ascertained with reasonable certainty from the face of the ballot, and the ballot is good and valid in other respects. (p. 717.)

Petitions for *mandamus* by Mont Phillips, J. Tom Daniel, and A. W. Holmes to compel the Board of Canvassers of Raleigh county to reconvene and count for them certain ballots.

*Writs Refused.*

UPSHUR HIGGENBOTHAM, A. A. LILLY and J. M. ANDERSON, for petitioners.

MOLLOHAN, McCLINTIC & MATHEWS, and J. E. SUMMERFIELD, for respondent.

POFFENBARGER, PRESIDENT:

The questions raised by the returns to three writs of *mandamus nisi*, sued out, respectively, by Mont Phillips, J. Tom Daniel and A. W. Holmes, candidates in the November election, respectively, for sheriff of Raleigh county, clerk of the county court of Raleigh county and state senator for the seventh senatorial district, are substantially the same as those disposed of in the case of *Shore* v. *Board*

*of Canvassers*, just decided. The plaintiffs sought peremptory writs of *mandamus* to compel the board of canvassers of Raleigh county to reconvene and count for them certain ballots which they had rejected in the progress of recounts. Cottle's plurality over Phillips was thirteen, that of Meadows over Daniel twelve and that of Smith over Holmes ninety-one in Raleigh county and only eight in the senatorial district, composed of four counties.

The construction of section 34 of chapter 3 of the Code, as amended by chapter 21 of the Acts of 1908, is the controlling factor in the case. We have just held, in *Shore v. Board of Canvassers*, that it mandatorily requires effect to be given to the intention of the voter when it is posssble to ascertain, from the face of the ballot, what his intention was with reasonable certainty, and that his deviation from the rules, and the directions given, in the statute for the preparation of the ballot, does not vitiate the ballot. The correctness of his ruling is challenged upon principles declared in *Morris v. Board of Canvassers*, 49 W. Va. 251, *Simms v. Daniel*, 49 W. Va. 554, *Doll v. Bender*, 55 W. Va. 404, and other cases in which said section 34 was construed before it was amended by the act of 1908. We said in *Shore v. Board of Canvassers* that the amendment had largely changed the character of that section and rendered most of the principles applied in those decisions inapplicable. We adhere to this. Before it was amended the section permitted but one general mode or plan of marking. It required one ticket to be selected and the names of all candidates voted for to be placed on it. All other tickets had to be erased or defaced. The voter was allowed great latitude in the selection of the means by which to deface the ballots which he did not wish to vote, but if he desired to make any change in the ticket selected, his discretion and volition were confined to narrow limits. He was compelled to write on his ballot the name of the candidate he wished to substitute for the name of any nominee of his own party. If he made alterations in the selected ticket in such manner as to indicate his intention we gave effect to it. This was as far as the statute permitted us to

go. It inhibited the counting of ballots for candidates when it appeared that the voter had left on the ballot sheet more than one undefaced ticket. In other words, if it appeared that he had attempted to vote for candidates on two tickets without transferring their names so as to put them all on one ticket the ballot was void and could not be counted. This denied to the elector the privilege of indicating, in any way he saw fit, the candidates for whom he desired to vote out of all those whose' names appeared on the ballot sheet. The result was that many of them lost their votes by their failure to comply with this requirement. As amended, the statute prescribes three different ways for voting a straight ticket and three ways for voting a mixed ticket. It expressly gives the voter the right to indicate by marks the men for whom he desires to vote without reference to the tickets on which their names appear. It expressly does away with the requirement that the names of all persons voted for be printed or written on one ticket. The voter may indicate by a mark his selection of one straight ticket or he may indicate that selection by defacing all the tickets except the one he desires to vote, or he may vote a straight ticket by placing marks in the squares before the names of all the candidates on the ticket he desires to vote. He may vote a mixed ticket by placing a cross in the circle under the emblem and then placing crosses in the squares before the names of candidates on other tickets for whom he desires to vote instead of their competitors on the ticket selected, or he may select his ticket by defacing all others on the ballot and then make changes in the one selected by writing the names of candidates on it in place of those printed on it, or without selecting any particular ticket he may mark the names of the men for whom he desires to vote wherever he finds them on the ballot sheet. After having thus liberally clothed the elector with discretion as to how he shall prepare his ballot, the section provides that "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice." The only clause in the section which inhibits the counting of ballots reads as follows: "If the voter mark more names than there are persons to be elected to an office, or if, for any reason, it is impossible to deter-

mine the voter's choice for an office, to be filled, his ballot shall not be counted for such office." This last clause impliedly says the ballot shall be counted if it is possible to ascertain the voter's choice. The other one says no ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice. Neither of these clauses appeared in section 34 before it was amended. The first one did appear in slightly different form in section 66 of chapter 3. But that was construed so as to be applicable to the interpretation of the one selected ticket and not to the ballot sheet. This is enough to show conclusively that the character and meaning of that section was wholly changed by the amendment thereof.

Many decisions of other jurisdictions have been brought to our attention which hold that all statutory directions to the voter as to the preparation of his ballot are mandatory and failure to observe them substantially invalidates the ballot. This Court has never adopted or applied that doctrine. On the contrary, we have held all these rules directory except in those instances in which the statute declared the effect of failure to comply with them to be invalidation of the ballot. In no instance have we rejected a ballot except for defects which the legislature had declared to be fatal. Under the old statute we never held but two classes of defective ballots void. One of these arose under section 34 and included those cases in which the voter had attempted to vote for part of the candidates on each of two tickets without transferring them all to one ticket. That was done because the legislature had said in the last clause of that section: "But if more than one of said ballots have nothing on them to indicate which of them was not so voted, then neither of them shall be counted." Read in connection with that requirement which said the voter should select a single ticket by defacing all others on the ballot, this clause made clear the legislative intent that the names of all persons voted for should appear on one ticket and not on two or more and inflicted the penalty of invalidity for failure to observe it. It was the prohibitory language of the statute upon which the decision rested. The other class arose under section 66 which said: "Any

ballot which is not endorsed with the names of the poll clerks as provided in this chapter shall be void and shall not be counted." *Kirkpatrick* v. *Deegan*, 53 W. Va. 275. Though the statute made it criminal to place distinguishing marks on the ballots, we decided in *Doll* v. *Bender* that such marks did not invalidate ballots because the legislature had not said it should have that effect. Having taken this position when the statute was more strict than it is now and placed greater restrictions upon the freedom of the voter in the preparation of his ballot than it does now, we are not disposed to recede from it. We then regarded our position as being sustained by the great weight of authority throughout the country and the strong trend of the decisions toward a just and permanent rule. We think an analysis of the later decisions and statutes indicates the correctness of this position. We are certainly not disposed, in view of the recent action of the legislature, in making the statute apparently as broad and liberal in favor of the voter as is consistent with any reasonable degree of regulation, to turn suddenly in a diametrically opposite direction.

Many of the ballots were very similar to those described in the opinion in *Shore* v. *Board of Canvassers.* We have examined them all and the results, as declared by the board of canvassers would be practically unchanged. Phillips and Cottle would each gain one, Daniel would gain three. Meadows would gain one and lose one. Holmes would gain two. Smith would gain one and lose one. The errors discovered are in ballots H No. 3, Y No. 5, C No. 4 and I No. 4. H No. 3 has a cross in the circle on the democratic ticket, and one in the circle on the republican ticket. The one on the democratic ticket bears very strong evidence of an attempt to erase it, indicating that the voter marked it by mistake and then corrected it. This the board of canvassers rejected. It should have been counted for the republican candidates. On Y No. 5, the voter had placed a large cross mark over the circle on every ticket except the republican ticket. On the latter no mark of any kind was placed. On the democratic ticket he had erased all the names of the candidates by horizontal lines running through them ex-

cept that of Smith and those of the candidates for district offices. There was nothing to indicate that he had voted for Smith. We regard the large "X's" over the circles as defacing marks and the ballot as showing a straight republican ticket. It was counted for Smith. On C No. 4, the voter had placed a cross in the circle on the republican ticket and another cross in the square before Meadow's name on the democratic ticket, but he blackened the latter cross out with his pencil. This was counted for Meadows whereas it should have been counted for Daniels, his competitor. I No. 4 was marked as follows: Cross in the circle on the democratic ticket. There is no other mark on it. For what reason the canvassers refused to count it for the democratic candidates, we are unable to see.

These corrections would not effect the election of any of the plaintiffs and we hold that a peremptory writ of *mandamus* does not lie merely to correct errors. It never goes except as a means of giving or restoring to the plaintiff something of substance.

To award the writs in this case would enable the plaintiffs merely to have the record show that they received more votes, and their competitors fewer votes, than the record, as it stands, now discloses, but not to give any of them a certificate of election, showing *prima facie* right to the offices for which they were running.

For the reasons stated, the returns to the alternative writs of *mandamus* are held sufficient and sustained by the evidence, and the peremptory writs prayed for are refused.

*Writs Refused.*