STATE *ex rel.* HENRY T. HAMMOND

v.

JOSEPH P. HATFIELD, *Mayor, etc., et al.*

(No. 10501)

Submitted July 8, 1952. Decided July 12, 1952.

408

Fox, Judge, not participating.

*Bias & Bias, J. Brooks Lawson, S. N. Friedburg,* for relator.

*Lant R. Slaven, Wade H. Bronson, Sr., Ersel L. Slater, E. E. Thomlinson, Jr., Zane Grey Staker, Wade H. Bronson, Jr.,* for respondents.

RILEY, PRESIDENT:

The relator, Henry T. Hammond, the unsuccessful Republican candidate for Mayor of the City of Williamson at an election held on June 10, 1952, brought this original proceeding in mandamus against Joseph P. Hatfield, Mayor of the City of Williamson, John Layne, Norman Roberts, Wilson R. Farrar, and Joe Marcum, members of the Council of the City of Williamson, the five so named, as such, comprising the Board of Canvassers of the City of Williamson until midnight on June 30, 1952 (hereinafter referred to as the "Board"), and their successors in office, Pierce B. Maynard, Mayor-elect of the City of Williamson, and John Layne, Walter L. Jude, Leonard Esteppe, and Wallace W. Farley, Councilmen-elect of the City of Williamson, who assumed their offices on July 1, 1952, and, as such, comprise the Successor Board of Canvassers of the City of Williamson (hereinafter referred to as the "Successor Board"); Melba Hatfield, Clerk of the City of Williamson and "her successor in office, if any there be,"; and Pierce B. Maynard individually, praying for a writ of mandamus commanding the Board or Successor Board to convene, as a board of canvassers, and count certain ballots for the relator Hammond, allegedly wrongfully counted for Mayor on the recôunt; count for the relator Hammond certain ballots not counted by the Board for either candidate; and reject and not count for either party certain other ballots allegedly wrongfully

counted for Maynard. The petition alleges that upon a proper counting and rejecting of ballots, the relator is the duly elected Mayor of the City of Williamson, and prays, *inter alia*, that the Board, or Successor Board, certify the result of the election, showing the votes cast in the mayoralty election for Mayor in the City of Williamson; praying also that relator be declared the successful candidate for Mayor of the City of Williamson; and that upon the result of the election being certified, the respondent Maynard forthwith vacate his office as mayor.

On the recount the Board found that tne respondent Maynard received one thousand nine hundred sixty-two votes and the relator Hammond one thousand nine hundred forty-nine votes.

By order entered on July 2, 1952, this Court directed that the respondent, Melba Hatfield, city clerk as aforesaid, deliver to the Clerk of this Court the disputed ballots referred to in the petition as "forty-five ballots." When the "disputed" ballots were delivered to the office of the Clerk of this Court, it was found that there were fifty-three ballots, instead of forty-five, as alleged in relator's petition. Of this number, five ballots, that is ballots 3, 4, and 5, Precinct No. 2, each marked "Spoiled"; ballot 4, Precinct No. 8, and the fifth not showing any ballot or precinct number, but marked "Not Counted. K. S.", are not to be considered in this proceeding because they are not properly in this case. Though the petition refers to forty-five disputed ballots, there are, in fact, forty-eight ballots in dispute, the three additional ballots being referred to in the record and in the petition as "three absentee ballots." Evidently these three absentee ballots are from Precinct No. 8, and are marked as ballots 5, 6, and 7, Precinct No. 8. Inasmuch as these ballots are referred to in the petition and the record, they should be considered in this proceeding.

The forty-eight ballots in dispute are:

Ballots 1, 2, 3, 4, and 5, Precinct No. 1;

Ballots 1 and 2, Precinct No. 2;

Ballots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11, Precinct No. 3;

Ballots 1, 2, and 3, Precinct No. 4;

Ballots 1, 2, 3, 4, 5, and 6, Precinct No. 5;

Ballots 1 and 2, Precinct No. 6;

Ballots 1, 2, 3, and 4, Precinct No. 7;

Ballots 1, 2, 3, 5, 6, and 7, Precinct No. 8; and

Ballots 1, 2, 3, 4, 5, 6, 7, 8, and 9, Precinct No. 9.

By order entered on July 12, 1952, this Court commanded the Successor Board, consisting of the persons hereinbefore named, to convene as a board of canvassers; treat the tabulation and computation of all ballots heretofore recounted by the Board as final, except the forty-eight ballots described above; count the forty-eight ballots in dispute, as provided by the mandate of the order; make a new tabulation and computation of the votes for Mayor of the City of Williamson, based upon the recount of all the ballots upon the recount theretofore conducted by the Board, exclusive of the forty-eight ballots in dispute; and certify a new declaration of the result of said election, to-wit: That in the election for mayor Hammond received one thousand nine hundred sixty-three votes, and Maynard received one thousand nine hundred sixty-one votes, a majority for Hammond of two votes. This order directed that upon the proper issuance and delivery of certificates of the result of the election for Mayor of the City of Williamson, in accordance with the mandate therein contained, the respondent, Pierce B. Maynard, forthwith vacate the office of Mayor of said City.

This opinion is written to state the views entertained by this Court, which prompted the entry of the order of July 12, 1952.

In the joint answer of the respondents and the brief filed by counsel for Maynard, it is alleged and asserted that Xs were forged before Hammond's name after the recount, or during the recount, while the ballots were on the table

in the Council room of the City of Williamson, on the following ballots: Ballot 2, Precinct No. 1; ballot 3, Precinct No. 3; ballot 4, Precinct No. 3; ballot 3, Precinct No. 8; ballot 8, Precinct No. 9; and ballot 9, Precinct No. 9.

It is alleged in respondents' answer that while the recount was being conducted and the ballots were on the table in the Council room, the room was filled with many adherents of both mayoralty candidates, who not only observed the recount, but actually crowded about the members of the Board and others actually participating in the recount, so that it was necessary to obtain the services of peace officers to maintain order and permit the Board to continue unmolested with the recount. On this basis the answer contends that the alleged forged ballots have lost their integrity and are therefore void. The answer alleges, and the stenographic record of the recount shows, that while the original and photostatic copies of the ballots exhibited to this Court bear Xs in the squares before Hammond's name on ballot 3, Precinct No. 3; ballot 4, Precinct No. 3; ballot 3, Precinct No. 8; and ballot 8, Precinct No. 9, these ballots were described in motions of Hammond's counsel directed to the canvassing board without any reference being made to the Xs appearing in the squares before Hammond's name. Ballot 2, Precinct No. 1 and Ballot 9, Precinct No. 9, are not described at any place in the stenographic report of the recount.

On the question whether these ballots have lost their integrity so that they may be disregarded by the canvassing board, this Court has held that "* * * the statutory test is the opportunity to tamper with the ballots and not actual evidence of tampering." *Taylor* v. *Board of Canvassers of Mineral County*, 119 W. Va. 378, pt. 2 syl., 193 S. E. 575. But even applying this test, we are of opinion that this Court cannot, as a matter of law, say that the six allegedly forged ballots have lost their integrity, for, while it may be true as alleged in respondents' answer, that the Council room was crowded during the course of the recount, resulting in interference with the work of the board of canvassers, the room at that time was well policed,

and the ballots, while being counted, were on the table in plain view of the canvassing board, which consisted of members of both political parties. The motions made by relator's counsel as to ballot 3, Precinct No. 3; ballot 4, Precinct No. 3; ballot 3, Precinct No. 8; and ballot 8, Precinct No. 9, in which no reference is made to the Xs in the squares before Hammond's name, are *ex parte* in their very nature and should not be given the effect of evidence of the ballot commissioners, the poll clerks, and persons present at the election.

As to whether the six ballots immediately under consideration should be declared void on the ground that the Xs appearing in the squares before Hammond's name were forged, and placed thereon either during or after the recount, we simply say that such question is factual, based on matters extrinsic to the record, and is proper for consideration only in an election contest. Upon a recount a board of canvassers cannot "consider or determine matters not shown by the election returns or by relevant evidence of the commissioners, the poll clerks, or other persons present at such election respecting such returns, or which may be established only by evidence extrinsic to the election returns." *State ex rel. Bumgardner* v. *Mills,* pt. 3 syl., 132 W. Va. 580, 53 S. E. 2d 416. In that case this Court held in point 4 of the syllabus: "Upon a recount of election ballots a board of canvassers may not consider or determine questions of fraud, intimidation or illegality in an election, the eligibility of a candidate, the validity of the appointment of precinct election officers, the qualifications of such election officers, or irregularities discoverable in the course of a recount which can be established only by evidence extrinsic to the election returns."

Being of opinion that these allegedly forged ballots have not lost their integrity; that the ballots themselves do not disclose that they have been illegally altered; and there being no relevant, competent testimony of the ballot commissioners, poll clerks, or other persons present at the election establishing that the ballots were, in fact, forged,

they will be considered along with the forty-two remaining ballots in dispute.

The forty-eight ballots in dispute should be appraised under applicable law. Section 11, Chapter 136, Acts of the Legislature, Regular Session, 1933, (the Charter of the City of Williamson), provides, in part: "The council of the city is hereby authorized and directed to hold and conduct all elections provided for herein, and to canvass and certify the returns therefrom and to try and decide all contests in the manner and form required by general law so far as applicable." So this case is governed by the general election laws of this State, and, in particular, by Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, Regular Session, 1943, which provides for the conducting of elections other than primary elections and the ascertaining and certifying of the results thereof. Section 19, in addition to prescribing certain directory rules to be observed by a voter in marking his ballot, provides that: "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice."

In the consideration of each of the ballots the question is: Is the ballot valid, and, if so, what was the intention of the voter in marking and casting his ballot? After all is said and done, the intention of the voter, when ascertainable, is the prime consideration on the question whether the ballot should be counted or discarded, and, if counted, for what candidate or candidates. *State* v. *Board of Canvassers,* 113 W. Va. 498, 168 S. E. 793, 794. And, where it is possible by exercising a liberal interpretation of the ballot to ascertain the intention of the voter, Section 19 requires that the voter's ballot shall be counted.

Initially, the question arises whether ballot 3, Precinct No. 1; ballots 8, 9, 10, and 11, Precinct No. 3; ballot 5, Precinct No. 5; ballot 6, Precinct No. 5; ballot 1, Precinct No. 6; ballot 1, Precinct No. 8; ballot 2, Precinct No. 8; ballot 5, Precinct No. 8; ballot 6, Precinct No. 8; ballot 7, Precinct No. 8, all absentee ballots are void and should not be considered in this Court, on the ground that these bal-

lots have not been properly indorsed in compliance with Code, 3-6-5, the pertinent provision of which reads: "Before any ballot is mailed or delivered, the clerk shall affix his official seal and he and the other members of the board of ballot commissioners shall place their signatures near the lower left hand corner on the back thereof." In *Hatfield* v. *Board of Canvassers of Mingo County*, 98 W. Va. 41, pt. 3, syl., 126 S. E. 708, this Court held that Section 10, Chapter 55, Acts of the Legislature, 1921, the then absentee voter's statute, "which directs that the poll clerks shall write their names on each absent voter's ballot before it is deposited in the ballot box is directory."; and "Their failure to do so does not *ipso facto* render the ballot void." At the time the *Hatfield* case was decided the pertinent statute, Section 5, Chapter 55, Acts of the Legislature, 1921, dealing with the mailing and delivery of absentee ballots, the forerunner of the present statute, Code, 3-6-5, read: "Before mailing or delivering any ballot the clerk shall fix his official seal and place his signature near the lower left hand corner on the back thereof." The *Hatfield* case was considered and its holding on the question now under consideration was discussed in the recent case of *State ex rel. Bumgardner* v. *Mills*, 132 W. Va. 580, 53 S. E. 2d 416. From a comparison of the present statute, Code, 3-6-5, with the former statute, Sections 5 and 10, Chapter 55, Acts of the Legislature, 1921, we are of opinion that the Legislature intended simply to substitute the ballot commissioners for the poll clerks in indorsing absentee ballots, except in the former statute the poll clerks were directed to affix their names to each absentee ballot before it is deposited in the ballot box, and under the present statute the members of the board of ballot commissioners, other than the clerk, were directed to indorse each absentee ballot before mailing or delivering it to a voter. If the direction that the poll clerk sign the ballots, as provided by the former statute, is directory, the provision as to the ballot commissioners, other than the clerk, indorsing the ballots, should likewise be held to be directory.

The absentee ballots now under consideration fall into two categories: (1) Ballot 3, Precinct No. 1; ballot 5, Precinct No. 5; ballot 6, Precinct No. 5; ballot 1, Precinct No. 6; ballot 1, Precinct No. 8; and ballot 2, Precinct No. 8, are signed by J. F. Stapleton, ballot commissioner, and Melba Hatfield, City Clerk and *ex-officio* ballot commissioner; and (2) ballots 8, 9, 10, and 11, Precinct No. 3; and ballots 5, 6, and 7, Precinct No. 8, which are signed by both the Republican and Democratic ballot commissioners, and Melba Hatfield, City Clerk and *ex-officio* ballot commissioner; but to none of these ballots has the City Clerk affixed the official seal. We are of opinion that not only is the provision of Code, 3-6-5, as to the signing of absentee ballots by the regular ballot commissioners, directory; but, in the absence of any question whether Melba Hatfield was, in fact, Clerk of the City of Williamson at the time she signed the ballots, the failure of the clerk to affix the seal does not affect the validity of the ballots.

We say this, because as suggested by this Court in the *Hatfield* case, a voter should not be disfranchised where, in all other respects, he has cast an effective vote because of the dereliction of election officials. In *Morris* v. *Board of Canvassers of the City of Charleston,* 49 W. Va. 251, pt. 2, syl., 38 S. E. 500, this Court held: "As to mistakes and irregularities in elections, a distinction exists between those made by the voter and those made by officers of election. In the former case such mistakes and irregularities may often destroy the ballot, while those of officers do not affect the election, if a fair election has been held"; and, at page 262 of the opinion, the Court, speaking through Judge Brannon, said: "We know of the large volume of law that statutes regulating elections are frequently treated as directory, and that mistakes and irregularities should not disfranchise a voter or deprive a candidate of his vote where the purpose and intent of the voter can be ascertained. *Loomis* v. *Jackson,* 6 W. Va. 613; *Dial* v. *Hollandsworth,* 39 *Id.* 1. In answer to this I call attention to the fact that authorities say that there is a distinction in this respect between errors of officers conducting elec-

tions, and errors of voters themselves; that in the former case, as a voter has no power of the officer, that officer's blunder shall not disfranchise the voter; whereas, the voter may by his own neglect disfranchise himself." To the same effect see McCrary on Elections, Section 724, cited with approval in the *Morris* case. True, this Court in the cases of *Hallanan* v. *Hager,* 102 W. Va. 689, 136 S. E. 263; and *Kirkpatrick* v. *Deegans,* 53 W. Va. 275, 44 S. E. 465, held, as mandatory, the provision of Code, 3-5-18, that: "Each poll clerk shall personally sign his name on the back of the ballot before delivering it to the voter, *and no election commissioner shall deposit in the ballot box any ballot upon which the names of the poll clerks do not appear.*" (Italics supplied.) The italicized portion of the last quotation from Code, 3-5-18, clearly expresses the legislative intent that, in the absence of the signatures of the poll clerks on ballots, other than absentee ballots and challenged ballots, ballots may not be deposited in the ballot box, and, under Code, 3-5-31, ballots, other than absentee ballots and challenged ballots, which have not been indorsed by both poll clerks, are void and shall not be counted. The instant statute, Code, 3-6-5, evidences no such legislative intent. Necessarily, this Court in the *Hallanan* and *Kirkpatrick* cases held that Code, 3-5-18, was mandatory; but in this case the instant ballots, being satisfactorily authenticated in every instance by the signatures of Melba Hatfield, City Clerk and *ex-officio* ballot commissioner, and at least one of the two regular ballot commissioners, the ballots should have been considered and, if regular on their faces, counted by the canvassing board in the first instance; and they were so considered by this Court in the entry of the order of July 12, 1952.

At this point the forty-eight disputed ballots will be considered and discussed in some detail, beginning with ballot 1, Precinct No. 1, *seriatim,* as follows:

Ballot 1, Precinct No. 1, not counted by the Board, should be counted for Maynard. This ballot has a distinct X in the circle on the Democratic ticket and an X in the circle on the Republican ticket, which is partially obliterated by

crudely made intertwining circles, evidencing the intention of the voter not to vote the Republican ticket, and resulting in a gain of one vote for Maynard.

Ballot 2, Precinct No. 1, counted by the Board for Maynard, should be counted for Hammond. This ballot has a bold X in the circle on the Democratic ticket; an X in the square before Hammond's name; and a partially obliterated X in the circle on the Republican ticket. The X in the square before Hammond's name serves to override the X in the Democratic circle, and therefore this ballot should be counted for Hammond, resulting in a gain of one vote for Hammond and a loss to Maynard of one vote. *Phillips* v. *Board of Canvassers of Raleigh County,* 64 W. Va. 715, 720, 63 S. E. 392.

Ballot 3, Precinct No. 1, an absentee ballot, carries on the back the notation "Counted K.S.", and was counted for Maynard. This ballot bears on its face a small but distinct X in the circle on the Democratic ticket and Xs in the squares before the names of Maynard and the Democratic candidate for Council in the First Ward. This, in our opinion, shows a clear intention on the part of the voter to vote a straight Democratic ticket, and should be counted for Maynard, which results in no change in the finding of the Board. *Phillips* v. *Board of Canvassers of Raleigh County, supra,* 720; Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballot 4, Precinct No. 1, marked "Counted. K. S.", counted for Maynard should be so counted, which results in no change from the finding of the Board. The ballot has no marks on the face thereof, except a distinct X under the emblem of the Democratic Party and the legend "Democratic Ticket", and outside the circle on the Democratic ticket. *Shore* v. *Board of Canvassers of Wood County,* 64 W. Va. 705, 708, 63 S. E. 389.

Ballot 5, Precinct No. 1, marked "Counted. K.S.", and evidently counted by the Board for Hammond, shows irregular pencil marks extending throughout the circle on

the Republican ticket, and an X in the square before the name of the Democratic candidate for Council in the First Ward. This ballot should not be counted for either party, resulting in the loss of one vote to Hammond.

Ballot 1, Precinct No. 2, marked "Not Counted" by the Board, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board, inasmuch as it bears a distinct X in the circle on the Republican ticket, and a single line in the circle on the Democratic ticket, indicating that the voter, having made a straight line in the Democratic circle, evidently decided to vote the Republican ticket and did not complete the X in the Democratic circle. *Hatfield* v. *Board of Canvassers of Mingo County,* 98 W. Va. 41, 52, 126 S. E. 708; Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballot 2, Precinct No. 2, not counted by the Board, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. This ballot bears distinct Xs in the squares before the names of Hammond and the Republican candidate for Council in the First Ward, and partially erased Xs in the Democratic circle and the square before Maynard's name. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballots 3, 4, and 5, Precinct No. 2, are marked "Spoiled". Evidently these ballots were not considered by the Board and are not considered by this Court in this proceeding. Ballot 3 bears distinct X marks in the squares before the names of Maynard and Hammond. Ballot 4 bears distinct cross marks in the squares before the names of Maynard and Hammond, and in the squares before the names of the Democratic and Republican candidates for Council in the First Ward. Ballot 5 bears no mark of any kind on its face.

Ballot 1, Precinct No. 3, not counted by the Board, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board, as it bears

Xs in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward, which serve to override the X mark in the Democratic circle. *State ex rel. Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S. E. 2d 416.

Ballot No. 2, Precinct No. 3, not counted by the Board, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. This ballot bears on its face distinct marks in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward, and no other marks. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943. This ballot was signed on the back by the voter, H. J. Waren, in violation of Code, 3-7-7, which provides that: "No voter shall place any mark upon his ballot, or suffer or permit any other person to do so, by which it may be afterward identified as the ballot voted by him"; and, further, that any person violating any provision of this section shall be guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars or confinement in jail for not more than one year or both, in the discretion of the court. Though the rule was otherwise when the statute provided that no ballot was permitted to be received, which had any marks, color or device visible on the same intended to distinguish it from other ballots voted at the election (*Daniel* v. *Simms,* 49 W. Va. 554, 570, 39 S. E. 690,) the present statute, which contains no such provision, has been construed to mean that, although the placing of an identification mark on a ballot is a misdemeanor, the vote should not be rejected, there being no legislative fiat to that effect. *State ex rel. Bumgardner* v. *Mills, supra,* 608; *Doll* v. *Bender,* 55 W. Va. 404, pt. 4 syl., 47 S. E. 293; and *State ex rel. Simon* v. *Heatherly,* 96 W. Va. 685, 123 S. E. 795. In point 4 of the syllabus of *Doll* v. *Bender,* this Court held: "Distinguishing marks on a ballot will not cause its exclusion from the count."

Ballot 3, Precinct No. 3, counted by the Board for Maynard, should not be counted for either party, resulting in

a loss of one vote to Maynard from the finding of the Board. It bears an X in the Democratic circle, a rather indistinct X in the circle on the Republican ticket, and an X in the square before Hammond's name. *State ex rel. Johnson* v. *Board of Canvassers of Kanawha County,* 102 W. Va. 703, 714, 715, 136 S. E. 772.

Ballot 4, Precinct No. 3, counted by the Board for Maynard, should be counted for Hammond, resulting in a loss of one vote to Maynard and a gain of one vote for Hammond from the finding of the Board. This ballot bears a distinct X in the Republican circle and in the square before the name of Hammond and a small X before the name of Maynard, the appearance of which indicates that the voter attempted to effect an erasure.

Ballot 5, Precinct No. 3, not counted by the Board, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. It bears distinct Xs in the Republican circle and in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward, and an X in the Democratic circle which is partially erased.

Ballot 6, Precinct No. 3, not counted by the Board for either party, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board, inasmuch as it bears distinct Xs in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward, and an X in the Democratic circle which is partially erased.

Ballot 7, Precinct No. 3, counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. The ballot bears an X in the Democratic circle and a partially erased X in the square before Hammond's name.

Ballots 8, 9, 10, and 11, Precinct No. 3, evidently absentee ballots, were not counted by the Board for either party, and were not counted by this Court, since Judges Haymond and Lovins would count them for Hammond, and Judges Given and Riley would not count them for either

party. In this regard, therefore, the action of the Board in not counting the ballots is affirmed by an evenly divided Court. These ballots were not placed in the ballot box between the opening and closing of the polls, and, in the opinion of Judges Given and Riley, they are void because Code, 3-6-10, as amended and reenacted by Section 10, Article 6, Chapter 44, Acts of the Legislature, 1941, has not been substantially complied with. Ballot 8 bears distinct Xs in the Republican circle and in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward. Ballot 9 bears a distinct X in the Republican circle and no other mark on the face thereof. Ballot 10 bears distinct X marks in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward, and no other mark on the face thereof; and ballot 11 bears distinct Xs in the squares before the names of Hammond and the Republican candidate for Council in the Second Ward and no other mark. Were it not for the irregularity in depositing these ballots in the ballot box before the closing of the polls, they should have been counted for Hammond.

Ballot 1, Precinct No. 4, not counted by the Board, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. This ballot bears a distinct X in the square before the name of Hammond and a light line through and beyond the square before Maynard's name. *Hatfield* v. *Board of Commissioners of Mingo County, supra*, 52.

Ballot 2, Precinct No. 4, counted for Hammond by the Board, should not be counted for either party, resulting in a loss to Hammond of one vote from the finding of the Board. It bears on its face crude circles around and through the squares before Hammond's name and the name of the Democratic candidate for Council in the Second Ward, and no other mark on the face of the ballot.

Ballot 3, Precinct No. 4, not counted by the Board, should be counted for Maynard, resulting in a gain of one vote over the finding of the Board for Maynard. This

ballot bears Xs in the squares before the names of Maynard and the Democratic candidate for Council in the Second Ward, and almost straight single lines across and beyond the square before Hammond's name and before the name of the Republican candidate for Council in the Second Ward. *Hatfield v. Board of Canvassers of Mingo County, supra,* 52.

Ballot 1, Precinct No. 5, not counted for either party, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. This ballot has a distinct X in the Republican circle and irregular marks almost filling the squares before the names of Hammond and the Democratic candidate for Council in the Second Ward. The clear X in the Republican circle indicates that the voter intended to vote a straight Republican ticket. *Phillips v. Board of Canvassers of Raleigh County, supra,* 720.

Ballot 2, Precinct No. 5, not counted for either party, was properly not counted, resulting in no change from the finding of the Board. This ballot bears on its face irregular marks almost filling the squares before the names of Hammond and the Democratic candidate for Council in the Second Ward, and no other mark.

Ballot 3, Precinct No. 5, not counted by the Board for either party, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. The ballot bears an X in the Democratic circle and Xs in the squares before the names of Hammond and the Democratic candidate for Council in the Second Ward. The specific mark before Hammond's name serves to override the general mark in the Democratic circle. *State ex rel. Bumgardner v. Mills, supra,* 603.

Ballot 4, Precinct No. 5, not counted by the Board for either party, should be counted for Hammond under the ruling in *State ex rel. Bumgardner v. Mills, supra,* 607, 608, resulting in a gain of one vote for Hammond over the finding of the Board. The ballot bears an X in the Demo-

cratic circle, and an X partly within and partly without the square before Hammond's name.

Ballot 5, Precinct No. 5, an absentee ballot, counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. The ballot bears an X in the Democratic circle, and Xs in the squares before the names of Maynard and the Democratic candidate for Council. This ballot indicates a clear intention on the part of the voter to vote a straight Democratic ticket. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballot 6, Precinct No. 5, an absentee ballot, counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. This ballot bears on its face an X in the Democratic circle and no other mark. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballot 1, Precinct No. 6, an absentee ballot, counted by the Board for Maynard was properly so counted, resulting in no change from the finding of the Board. This ballot has an X in the Democratic circle and no other mark on its face, and evidences that the voter intended to vote the straight Democratic ticket. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballot 2, Precinct No. 6, counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. This ballot bears an X in the circle on the Republican ticket, and a small and rather indistinct X in the square before Maynard's name. The specific mark, under the ruling in *State ex rel. Bumgardner* v. *Mills, supra,* serves to override the general mark in the Republican circle.

Ballot 1, Precinct 7, counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. This ballot bears distinct Xs in the

squares before the names of Maynard and the Democratic candidate for Council in the Third Ward, and heavy irregular marks almost filling the squares before the names of the two Republican candidates, which, in our opinion, indicate the voter's intention to vote a straight Democratic ticket and eliminate the names of the Republican candidates. *Phillips* v. *Board of Canvassers of Raleigh County, supra,* 720.

Ballot 2, Precinct No. 7, not counted by the Board for either party, was properly not counted, resulting in no change from the finding of the Board. This ballot bears heavy pencil marks almost completely covering the squares before the names of Hammond and the Republican candidate for Council in the Third Ward and no other mark. *Phillips* v. *Board of Canvassers of Raleigh County, supra,* 720.

Ballot 3, Precinct No. 7, counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. This ballot bears Xs in the squares before the names of Maynard and the Republican candidate for Council in the Third Ward, and substantially straight lines, beginning within the squares before the names of Hammond and the Democratic candidate for Council in the Third Ward, and extending outside the squares. *Hatfield* v. *Board of Canvassers of Mingo County, supra,* 52.

Ballot 4, Precinct No. 7, not counted by the Board for either party, was properly not counted. Through inadvertence the recital in the order of July 12, 1952, states that this is a ballot which should have been counted for Maynard. The ballot bears an X after Maynard's name, and Xs in the squares before the names of Hammond and the Republican candidate for Council in the Third Ward. If this ballot should be counted for Maynard, the result of the election would be one thousand nine hundred sixty-two votes for Maynard and one thousand nine hundred and sixty-three votes for Hammond; but the mandate of the order provides that the Successor Board shall issue a

certificate of the result of the election, certifying that Hammond received one thousand nine hundred sixty-three votes and Maynard one thousand nine hundred sixty-one votes.

Ballot 1, Precinct No. 8, not counted by the Board for either party, should be counted for Maynard, resulting in a gain of one vote for Maynard over the finding of the Board. On its face the ballot bears an X in the Democratic circle, and no other mark thereon, indicating it was clearly the intention of the voter to vote a straight Democratic ticket. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballot 2, Precinct No. 8, an absentee ballot, not counted by the Board for either party, should be counted for Maynard, resulting in a gain of one vote for Maynard over the finding of the Board. This ballot bears on its face an X in the Democratic circle, and no other mark. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943, and indicates the intention of the voter to vote a straight Democratic ticket.

Ballot 3, Precinct No. 8, counted by the Board for Maynard, was considered by this Court as a vote for Hammond, except for his admission that it should not have been counted for either party, resulting in a loss of one vote to Maynard from the finding of the Board.

Ballot 4, Precinct No. 8, bearing on the back the notation "Counted K.S.", is not properly in this case, and was not considered by the Court in the entry of its order of July 12, 1952.

Ballots 5, 6, and 7, Precinct No. 8, absentee ballots, not counted by the Board for either party, should be counted for Hammond, resulting in a gain for Hammond of three votes over the finding of the Board.

Ballot 5 bears a distinct X in the Republican circle and no other mark on the face thereof. Ballot 6 bears a distinct X in the Republican circle, and Xs in the squares before the names of Hammond and the Republican candi-

date for Council in the Third Ward; and ballot 7 bears a distinct X in the Republican circle and no other mark on the face thereof. These three ballots clearly indicate the voters intentions to vote straight Republican tickets. Code, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943.

Ballots 1, 2, and 3, Precinct No. 9, not counted by the Board for either party, were properly not counted, resulting in no change from the finding of the Board, as these ballots are signed by only one poll clerk. Under Code, 3-5-18 and 3-5-31 ballots, other than absentee ballots and ballots of challenged voters, which are not indorsed by the poll clerks are void. *State ex rel. Bumgardner* v. *Mills, supra,* 597; 6 M. J., Elections, Section 374.

Ballot 4, Precinct No. 9, bearing on the back the notation "Counted, K. S.", and evidently counted by the Board for Maynard, was properly so counted, resulting in no change from the finding of the Board. This ballot bears a distinct X in the Democratic circle and in the squares before the names of Maynard and the Democratic candidate for Council in the Fourth Ward; and by irregular marks, extending throughout the Republican ticket, the voter indicated that it was not his intention to vote for either of the two candidates on that ticket. Though there are irregular marks on the Democratic ticket, this ballot should be counted for Maynard because the Xs in the Democratic circle and before the name of Maynard are clear and distinct.

Ballot 5, Precinct No. 9, counted by the Board for Hammond, was properly so counted, resulting in no change from the finding of the Board. This ballot bears a distinct X in the Democratic circle and distinct Xs in the squares before the names of Hammond and the Democratic candidate for Council in the Fourth Ward. The specific X before Hammond's name, under the ruling of this Court in *State ex rel. Bumgardner* v. *Mills, supra,* indicates the intention of the voter to vote for Hammond.

Ballot 6, Precinct No. 9, counted by the Board for May-

nard, was properly so counted, resulting in no change from the finding of the Board. The ballot bears a distinct X in the squares before Maynard's name and that of the Republican candidate for Council in the Fourth Ward, and a partially erased X in the square before Hammond's name, which indicates that the voter did not intend to vote for Hammond.

Ballot 7, Precinct No. 9, not counted by the Board for either party, should be counted for Hammond, resulting in a gain of one vote for Hammond over the finding of the Board. This ballot bears an X in the Democratic circle, and Xs in the squares before the names of Hammond and the Republican candidate for Council in the Fourth Ward. The marks indicate that it was the voter's intention to vote for both of the Republican candidates. *State ex rel. Bumgardner* v. *Mills, supra.*

Ballot 8, Precinct No. 9, counted by the Board for Maynard, should not be counted for either party, resulting in a loss of one vote for Maynard from the finding of the Board. This ballot bears Xs in both the Democratic and Republican circles, and in the squares before the names of Maynard and Hammond and the Democratic candidate for Council in the Fourth Ward. From these marks the intention of the voter cannot be ascertained with any degree of certainty.

Ballot 9, Precinct No. 9, not counted by the Board for either party, would have been counted by this Court for Hammond, except for the latter's admission before the Court that it should not be counted for either party.

An unmarked ballot, evidently cast in the Ninth Precinct, bearing on the back the notation "Not Counted K. S.", was not considered by this Court, for the reason that it is mutilated inasmuch as it bears Xs in both the Democratic and Republican circles, and check-marks in the squares before the names of Maynard and Hammond.

On the basis of the foregoing and not counting for either party ballot 4, Precinct No. 7, Hammond gained

sixteen votes and lost two, making a total gain of fourteen votes, which, added to the one thousand nine hundred forty-nine votes to which the Board found him entitled, gives him a total vote of one thousand nine hundred sixty-three; and Maynard lost five votes, and gained four, making a total loss of one vote, which deducted from the one thousand nine hundred sixty-two votes to which the Board found him entitled, gives him a total vote of one thousand nine hundred sixty-one votes, or a majority for Hammond of two votes.

This proceeding was instituted by the filing of a petition on July 1, 1952, after the expiration of the terms of office of the board of canvassers, which made the recount and issued the certificates of the results of the election, sought to be corrected, against the members of the board of canvassers, who theretofore had made the recount and issued the certificates of the results of the election, and against their successors in office, who are impleaded in their official capacities. The order of July 12, 1952, issued the writ of mandamus prayed for, directing that the successor officers, Pierce B. Maynard, Mayor; and John Layne, Walter L. Jude, Leonard Esteppe, and Walter W. Farley, Councilmen, convene, as a board of canvassers, correct the recount, in accordance with the mandate of the order, and issue new certificates of the result of the election based upon the recount, as corrected, which we deemed proper, in view of the holding of this Court in the case of *Holdermann* v. *Schane*, 56 W. Va. 11, 48 S. E. 512. Point 1 of the syllabus of that case held: "A writ of *mandamus* does not lie against the mayor and councilmen of a city to compel them to reconvene as a canvassing board and recanvass an election for city recorder, their terms having expired, when *mandamus* is asked." So this case does not present the question whether a proceeding in mandamus, for the purpose of correcting a recount, brought against the members of the canvassing board, which had conducted the recount in their official capacities, abates at the expiration of their terms of office. In this regard the above-cited case of *Holdermann* v. *Schane* is not in point, and

has no application to this proceeding. Though not decisive of the question immediately under discussion, we invite attention to the case of *Hebb* v. *County Court of Tucker County,* 48 W. Va. 279, 49 W. Va. 733, 37 S. E. 676, 3 Anno. Cas. 170, in which the issuance by the Circuit Court of Tucker County of a peremptory writ of mandamus against the new members of the county court as a board of canvassers, where the original writ had been applied for against their predecessors, was affirmed by a divided Court without discussion. Also see generally *Comley ex rel. Donovan* v. *Lawlor,* 120 Conn. 610, 182 A. 218, 102 A. L. R. 938, pages 957 and 958 of the annotation to the case.

For the foregoing reasons this Court was prompted to enter the order of July 12, 1952, awarding the writ of mandamus prayed for.

*Writration awarded.*