JAMES MULCAHY, PLAINTIFF, v. BERGEN COUNTY BOARD OF ELECTIONS, MIMI SARTHOU, SUPERINTENDENT OF ELECTIONS OF BERGEN COUNTY, CARL R. HARTMANN, BERGEN COUNTY CLERK, MARGARET SUMAN, BOROUGH CLERK OF THE BOROUGH OF OAKLAND, AND JACK TAUBER, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 31, 1978.

430

*Mr. John F. McCambley* for plaintiff.

*Mr. Malcolm Blum* for defendant Jack Tauber (*Messrs. Carlton & Blum,* attorneys).

PETRELLA, J. S. C. This is an election contest suit and the facts are largely undisputed. On November 8, 1977 four candidates ran for two councilman-at-large positions in the Borough of Oakland. The results of the tabulation of ballots showed the following:

| | |
|---|---|
| Enright (R) | — 1928 |
| Tauber (D) | — 1905 |
| Mulcahy (R) | — 1903 |
| Held (D) | — 1745 |

On November 15, 1977 a petition for recount was filed under the provisions of *N. J. S. A.* 19:28–1 *et seq.* Security for costs was deposited.

Pursuant to the resulting court order the Bergen County Board of Elections, on notice to all interested parties, conducted the recount on November 22, 1977, including the examination of the voting machines and the absentee ballots. The new tally showed that plaintiff-petitioner Mulcahy had received two additional absentee votes, placing him in a tie for the second council position. Curiously, it developed that the board had apparently received 99 absentee ballot envelopes, but could account for only 98 ballots. The deciding vote was missing; however, there is no allegation of fraud or foul play. Consequently, the Bergen County Board of Elections was unable to and did not certify a winner. The attorneys for Mulcahy and Tauber, respectively, applied on

short notice (R. 1:6–3) to this court for alternative forms of relief in order to resolve how the seat was to be filled.

I

Mulcahy contended that certain absentee ballots which were not counted because they were received late (one or two days after election day) should be included because severe rainstorms and flooding conditions on election day allegedly prevented timely delivery by the postoffice officials to the election board. Plaintiff relied on the certified statement of an official of the post office that some mail deliveries were delayed on November 8 for several hours due to the inclement weather, and that a mail truck was delayed for almost 3½ hours on its usual trip from the Newark Postoffice. As to that late delivery, he said it was "possible that one or more of these items of mail were on the truck delayed by the storm." Plaintiff sought to have the following ballots counted:

| Postmarked | Place of Mailing[1] | Date Rec'd by Bd. of Elections |
|---|---|---|
| Nov. 7, 1977 | Syracuse, N. Y. | November 9, 1977 |
| Nov. 7, 1977 | Wilmington, Del. | November 9, 1977 |
| Nov. 8, 1977 | Knoxville, Tenn. | November 10, 1977 |
| Non-Cancelled | Washington, D. C. | November 10, 1977 |
| Nov. 7, 1977 | San Diego, Cal. | November 9, 1977 |
| Nov. 7, 1977 | New Brunswick, N. J. | November 10, 1977 |
| Nov. 7, 1977 | Allston, Mass. | November 10, 1977 |
| Nov. 8, 1977 | Paterson, N. J. | November 9, 1977 |

Counsel for plaintiff argued that voting is a right pursuant to N. J. S. A. 19:1–1 and, therefore, these ballots should be counted. But that section is not an absolute, as can be seen by the exceptions and limitations set forth therein. Judge Jayne said in De Flesco v. Mercer Cty. Bd. of Elections, 43 N. J. Super. 492 (App. Div. 1957):

---

[1] Name of voter omitted.

The opportunity of an absentee to cast his vote at a public election by mail has the characteristics of a privilege rather than of a right. Even the recognized right of every voter personally to express his will at the polls is not an absolute but a conditional right dependent upon many circumstances, some of which are not within the control of the voter . . . . When, where, and how the voting is to take place are matters prescribed and governed by the will of the Legislature. [at 495–496; citations omitted]

[2] Thus, absentee voting has been also referred to as a privilege rather than a right, and its roots must come by way of legislative enactment since absentee voting did not exist at common law. See 2 *Antieau, Municipal Corporation Laws*, § 17.19 at 568.1 (1973). *N. J. S. A.* 19:57–1 *et seq.* sets forth the requirements of absentee voting. The tenor of the act is to specify those entitled to vote and procedures to be utilized when a voter is unable to personally vote at the polls on election day.

The specific statute in question (*N. J. S. A.* 19:57–26) reads:

All valid military service ballots and valid civilian absentee ballots received by the county boards prior to the time designated for the closing of the polls for each election shall be counted.

█ Plaintiff has not offered a single ballot which was received on election day, but rather, relies on the alleged exceptional circumstances of the weather to bolster his argument. The critical time in the statute is that an absentee vote must be *received* by the board of elections before the closing of the polls on election day. The postmark date is not and cannot be controlling; the received date is and must be conclusive to avoid fraud and provide some finality to the closing of the polls.

█ The court is mindful of the statutory reference which requires liberal construction[2] of the act, *N. J. S. A.*

---

[2] There are only a few sections in the election laws which contain the somewhat common statement found in many other laws that the

19:57–3. Nevertheless, it has long been held that this clause "is not a license to completely disregard the clear and explicit provisions in the absentee voting law which were adopted to preserve the sanctity and proper functioning of the elections laws." *In re Gould*, 81 *N. J. Super.* 579, 584–585 (Law Div. 1963) (where Judge Halpern disallowed two absentee votes; one of a soldier who signed his own jurat in contravention of *N. J. S. A.* 19:57–17, and the other where the required physician's certificate was not attached as provided by *N. J. S. A.* 19:57–18. See *In re Keogh-Dwyer*, 85 *N. J. Super.* 188, 204–205 (App. Div. 1964), rev'd on other grounds, 45 *N. J.* 117 (1965), where two votes were rejected for not providing "the reason why they desired an absentee ballot".

█ The court has no authority or discretion to adjust the time requirement. To do so would undermine the legislative intent and pave the path for future abuses. There have been many changes in the postal system in recent years which the court could well take judicial notice of, including the private use of postage meters, a mechanism which could easily subject the absentee voting procedure to abuse if the postmark date was determinative.

---

legislation is to be "liberally construed" or given "liberal construction." See also, *N. J. S. A.* 19:13–3 (relative to procedure for nomination of candidates) ; *N. J. S. A.* 19:44A–23 and 42 (Campaign Contributions and Expenditures Reporting Act) ; *N. J. S. A.* 19:53A–2 (Electronic Voting System Law), and *N. J. S. A.* 19:57–3 (relative to Absentee Voting Act). Even where legislative intent might warrant liberal construction it should be done only where the facts warrant and violence will not be done to the legislative scheme by such construction. See *In re Chirico*, 87 *N. J. Super.* 587 (App. Div. 1965), certif. den. 45 *N. J.* 32 (1965) ; *Sadlock v. Allan*, 25 *N. J.* 118, 129 (1957), and *Fiscella v. Nulton*, 22 *N. J. Super.* 367, 372 (App. Div. 1959).

* * * We are not unaware of the judicial tendency in election cases to discard merely technical irregularities, but it must be realized that liberal judicial interpretation or construction of a statute has its limitations. *DeFlesco v. Mercer Co. Bd. of Elections, supra* [43 *N. J. Super.* at 498]

Absentee voting should be done in conformity with the statute since such statutes are not designed to insure a vote but rather to permit a vote in a manner not provided by common law. \* \* \* Needless to say, however, the courts will not sanction flagrant irregularities which circumvent the plain purposes of the law and open the door to fraud. [3 *McQuillin, Law of Municipal Corporations* (3 ed. 1973), § 12.16 at 124.]

In *DeFlesco v. Mercer Bd. of Elections, supra* (43 *N. J. Super.* at 495), the trial court had erroneously permitted certain ballots postmarked prior to election day, but received after that day, to be opened and counted. The Appellate Court reversed. Judge Jayne, speaking for the panel, noted:

\* \* \* we are unable to discern in our present statute any legislative intent to constitute the time of mailing, postmarked on the envelope, as the determinative of the lawful propriety of the counting and canvassing of the enclosed ballot.

\*       \*       \*       \*       \*       \*       \*       \*

Just as it has always been deemed necessary to designate a time for the closing of the polls to resident voters, so likewise is it expedient and practicable also to fix the time of the closing of the polls to the absentee voters. The obligation of both the resident voter and the absentee voter is to deliver his ballot to the proper election officials within the prescribed time, in the former case in person, and in the latter by mail. (43 *N. J. Super.* at 499–500).

The *DeFlesco* rationale is controlling as to this aspect of the case. See *State v. Sheppard,* 125 *N. J. Super.* 332, 335 (App. Div. 1973), and *Caldwell v. Rochelle Park Tp.,* 135 *N. J. Super.* 66, 76–77 (Law Div. 1975). Indeed, in the present case one ballot bears no postmark. This forewarns of the panoply of problems which could result if the statute[3] is not enforced as written.

-----

[3] Enacted originally as *L.* 1953, *c.* 211, this section was not changed when numerous other sections of the Absentee Voting Law were amended by *L.* 1968, *c.* 208, as well as other enactments subsequent thereto. *Cf. In re Keogh-Dwyer,* 45 *N. J.* 117, 120 (1965), and *Caldwell v. Rochelle Park Tp.,* 135 *N. J. Super.* 66, 74 (Law Div. 1975).

> The preservation of the enfranchisement of qualified voters and of the secrecy of the ballot, the prevention of fraud, and the achievement of a reasonably prompt determination of the result of the election have been the vital considerations in the development of the absentee voting legislation. [*DeFlesco v. Mercer Bd. of Elections, supra* (43 *N. J. Super.* at 496)]

See generally, *Aspen v. Howell,* 170 *Colo.* 82, 459 *P.* 2d 764, 767 (Sup. Ct. 1969) ; *Mommsen v. School District,* 181 *Neb.* 187, 147 *N. W.* 2d 510, 513 (Sup. Ct. 1966), and *Hammond v. Hatfield,* 137 *W. Va.* 407, 71 *S. E.* 2d 807, 816 (Sup. Ct. 1952). The court need not mention other problems that may arise in this age of instant computer predictions of elections based on preliminary returns.

There is hardly an election where some voters do not find it difficult to get to the polls. The infirm, the travelling businessman, may require absentee ballots. Each must forward his absentee vote so it is received before the time designated for the closing of the polls. The weather, albeit perhaps stormy and impeding travel, is a factor that may occur any year and all voters may be confronted with it. Likewise, absentee voters share similar risks. When a voter entrusts his ballot to a third party, even if the United States Postal Service, the voter takes the responsibility and the risks of nondelivery. The prevention of fraud and potential abuse of the absentee voting procedure outweigh arguments here that the statute should or could be relaxed for late delivery due to bad weather.

## II

Since the absentee votes are not to be counted, there is still a tie.[4] Defendant Jack Tauber sought by cross-petition to have the board of elections conduct a runoff election for the second seat. Although this option accords most nearly

---

[4] Plaintiff may apply for the return of the deposit under *N. J. S. A.* 19:28–2.

to notions of public participation and self-determination, this remedy has been supplanted due to the Municipal Governing Body Vacancy Law, *N. J. S. A.* 40:45B-1 *et seq.* (*L.* 1975, *c.* 213, approved and effective September 29, 1975). See generallly, 3 *McQuillin, Law of Municipal Corporations* (3 ed. 1973), § 12.20 at 139-140.

Under the statute a vacancy occurs if certain situations exist. The applicable condition in this case is enumerated in *N. J. S. A.* 40:45B-6(h), which states in pertinent part:

> The office of any member of the governing body of any municipality shall be deemed vacant under any of the following conditions:
>
> *      *      *      *      *      *      *      *
>
> h. It comes within the purview of R. S. 19:3-25.

*N. J. S. A.* 19:3-25 provides in pertinent part:

> *      *      *      *      *      *      *      *
>
> When an equal number of votes shall have been given to two or more persons to fill any office for which they shall by law be qualified, the office shall be deemed to be vacant. * * *

Hence, in the present case where a tie exists the position must be filled in accordance with the vacancy law. See *Republican Comm. of Garwood v. Garwood,* 140 *N. J. Super.* 593, 595-596 (Law Div. 1976), and *Application of Moffat,* 142 *N. J. Super.* 217, 220-221 (App. Div. 1976). *N. J. S. A.* 40:45B-2(b) and (c) apply, and the vacancy can be filled within 30 days of the occurrence of the vacancy by a majority of the governing body until the next ensuing general election.

The final question is somewhat novel under this law and relates to who may be appointed to fill this council seat under the vacancy law in light of *N. J. S. A.* 40:45B-3. That section provides:

> Every person appointed by the governing body or by the Governor to fill a vacancy, either for the unexpired term or temporarily, shall

have the qualifications required by statute to permit the appointee to qualify for election to said office, and if the previous incumbent had been elected to office as the nominee of a political party, the person so appointed shall be of the same political party.

The facts are not in dispute as to the past and present political party affiliations of the holders of the now declared vacant seats and the various candidates. The candidate who achieved the highest number of votes and who undisputedly won one of the two vacant seats was not an incumbent. The two seats which were up for election were held by Mr. Tauber and a Mr. Crifasi, who both had run and been elected to the borough council in the November 1974 election as independents. Mr. Crifasi subsequently resigned and Mr. Mulcahy (plaintiff herein) was appointed to fill the vacancy. The cited subsection is inapplicable in the present case for two reasons.

First, according to the statute it is the party affiliation of the person who had been elected that is significant. In a different suit involving the same municipality and some of the parties, it was determined that "a citizen's group in the borough known as the 'Independent Party' * * * did not constitute a political party within the meaning of the Municipal Governing Vacancy Law." *Crifasi v. Oakland*, 151 *N. J. Super.* 98 (Law Div. 1976). This case was affirmed in part and reversed in part on other grounds after the oral decision in the instant case. See 156 *N. J. Super.* 182 (App. Div. 1978). Therefore, since the previous incumbents of both seats up for election were not *elected* as nominees of a political party, *N. J. S. A.* 40:45B-3 does not apply.

Secondly, it is difficult to determine which vacant seat remained unfilled in the present case where a challenger received the highest number of votes and two incumbents seeking reelection tied for the remaining office.

At the time of the 1977 election Messrs. Mulcahy and Tauber held the council positions, but in this election Tauber ran as a Democrat rather than an Independent. Enright, a nonincumbent Republican was an undisputed successful

candidate. But, it would not be proper to say here that Enright was elected specifically to either the seat previously held by Tauber or by Mulcahy. Certainly he did not run for a specific seat on the borough council, but rather for one of the two open positions. Nor is it a case of the elected person filling his own party's seat first.

In *Republican Comm. of Garwood v. Garwood, supra* (140 *N. J. Super.* 593), Judge DeBuono envisioned but did not rule on a comparable situation. There two at-large positions were up for election and the two incumbents as well as two challengers ran. The incumbent Democrat won and the incumbent Republican tied with the Democrat challenger. The court held that a vacancy existed by virtue of the tie and that the incumbent was a Republican. Accordingly, the council was required by statute to appoint a Republican to the vacant position. The situation which occurred here was not decided. See 140 *N. J. Super.* at 598–600.

The incumbent proviso does not apply where the condition in the statute cannot be met, or as in this case, where it is impossible to determine which seat is vacant. However, it does not necessarily follow that the vacancy law does not apply at all. It is a fundamental rule of statutory construction that a court in interpreting an enactment should give efficacy to the Legislature's intent so long as the construction is sensible and consonant to reason. See *In re Appointment to Rutherford Borough,* 140 *N. J. Super.* 328, 336 (Law Div. 1976); 2A *Sutherland, Statutes and Statutory Construction* (Sands ed. 1973), § 45.05 at 15–18; see also, *Maritime Petroleum Corp. v. Jersey City,* 1 *N. J.* 287, 298 (1949); *Edgewater v. Corn Products Refining Co.,* 136 *N. J. L.* 664, 668–669 (Sup. Ct. 1948); *Petition of Gardiner,* 67 *N. J. Super.* 435, 444 (App. Div. 1961); *Cedar Park Cemetery v. Hayes,* 132 *N. J. Super.* 572, 580 (L. Div. 1975); *Keenan v. Bd. of Chosen Freeholders,* 105 *N. J. Super.* 271, 279 (Law Div. 1969). *Cf. State v. DeSantis,* 65 *N. J.* 462, 473 (1974).

In the present case the intent of the Legislature is to fill vacancies by appointment until the next general election in order to avoid the expenses of conducting a run-off. The Legislature opted to maintain the status quo during the appointment period by requiring the appointment of a qualified member of the same political party as the prior elected officeholder. Here, since it can neither be determined which seat was won by the nonincumbent, and the prior incumbent who had been elected was not the nominee of any political party, the statute allows appointment by majority vote of the whole council without consideration as to the political party affiliation of the former incumbent of the vacant seat.

An order will be entered directing the governing body of Oakland to fill the vacancy pursuant to the Municipal Governing Body Vacancy Law, but without regard to political party affiliation, until the next general election.