# CHARLESTON.

## STANTON v. WOLMESDORFF.

### Submitted March 8, 1904—Decided April 1, 1904.

1.  MANDAMUS—*Notice.*

    Where in the first instance, under section 89, chapter 3, Code 1899, a peremptory *mandamus* is sought, dispensing with a rule or conditional *mandamus*, notice of the application must be first given, and the adverse party allowed to defend. (p. 602).

2.  MANDAMUS—*Canvassing Board.*

    Under a *mandamus* awarded under section 89, chapter 3, Code 1899, a canvassing board may be directed and compelled to count a particular ballot in a particultr way or for a particular candidate. (p. 603).

Application of George J. Stanton for writ of *mandamus* to James O'Kane, mayor of the town of Wolmesdorff, and others.

*Writ Awarded.*

W. B. MAXWELL and D. H. HILL ARNOLD, for petitioner.

C. H. SCOTT, for respondents.

BRANNON, JUDGE:

An election was held, 7th January, 1904, for mayor, recorder and five councilmen for the town of Wolmesdorff, Randolph county. The ballots were separate, not on ballot sheets, under the law as it was prior to act 1891, found in Code 1899, chapter 3. There were two tickets. The name of George J. Stanton was printed along with four others for councilmen on only one of the tickets, and the names of John B. King and P. F. Joyce were printed for councilmen on the other ticket only. The returns of the election and the canvass by the council showed that each of said candidates for council received fifty-four votes. The election officers solved the tie vote by choosing King by lot, and the council declared him elected. There is no dispute as to the fifty-four votes; but there is a ballot claimed by Stanton as a good vote for him which was rejected. Then Stanton asked of the circuit court a *mandamus* to the council to compel it to reassemble and count that ballot for him, and declare him elected, and being refused, has come to this Court for a

*mandamus* to compel the council to count that ballot for him, and declare him elected, and compel the council to admit him to his office, and dispense with a preliminary rule, he having given notice of the application to the proper parties.

King presented to this Court a paper styling itself "answer and return." The petition seeking, in the first instance, a peremptory *mandamus,* thus dispensing with a *mandamus nisi* or rule, as allowed in election cases by Code, chapter 3, section 89, Stanton excepted to it because a return is not admissible to a peremptory *mandamus.* There being no alternative *mandamus* or rule, no return, properly so called, can be made; but we are sure that the Code does not contemplate the award of a final writ without a right to defend against its award. Though the Code does not mention notice, we must apply the rule that though it does not call for notice, yet where judicial action is to be had to a man's prejudice, the statute is construed to intend notice, as without it such action would be void and would not be due process of law. *Evans* v. *Johnson,* 39 W. Va. 299, 302; 7 Rob. (new) Prac. 22. Where such peremptory writ is asked in the first instance, notice of the application, or in its asked in the first instance, notice of the application, for it must be given preliminary to such application, or in its absence the court must give notice by rule, or cause the party to give it before action, and allow defense. This return can be treated as an answer to the petition, and no objection can be made to it on the ground stated.

King resists the application for *mandamus* on the ground that as asked it would require the council to count the contested ballot for a particular candidate, contrary to the rule stated in *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263; that *mandamus* will not compel an act judicial in nature, but only ministerial; it will compel action, but not any particular action that savors of the judicial function; that in this case whether that ballot is, in law, a good ballot, and how it should be counted, is such a question, and *mandamus* will not lie. True, such is the general rule, as stated in that case; but it was also stated that the writ, as allowed in the election statute, is an exception, and has wider function. *Hebb* v. *Cayton,* 45 W. Va. 578, is cited as antagonistic to the *Marcum Case* and as holding that the writ can go no further than to compel action, not to direct particular

action; but that case pointedly makes the writ, when used under·
the election law, applicable to election matters, "whether minis-
terial or judicial; in other words, giving it the appellate func-·
tion of *certiorari*". In order not to be misunderstood, the gen-
eral rule of the function of *mandamus* was stated; but the pe-
culiar function in election cases was also stated. This distinc-·

The contested ballot: It is quite plain that it ought to have·
been counted for Stanton. On it stands intact his name as one·
of the five persons voted for under the words "For councilmen."·
How can anybody say that the voter using this ballot did not in-
tend to vote for him? A ballot is a paper to express intent,·
and where its language is plain, we must take it, and not go to·
guessing that the voter meant something else. John Shannon's·
name was printed on the ballot under the words "For Recorder,"·
and the voter erased his name and wrote in below it the name of
P. F. Joyce, and so voted for Joyce for recorder, not for coun-
cilman, by plain language and legal import. The fact that·
Joyce was on another ticket for councilman was perhaps taken·
as the ground for mere guess that the voter intended to vote for·
him for councilman, thinking Shannon's name was Stanton,·
against plain language and expression—surmise against ex-
pression. It is unwarranted assumption and inexcusable action
against a man's just right. It can hardly be called error of·
judgment. The old election law, Code 1887, chapter 3, section
13, if it applied, would justify no such action. It says "the·
ballot shall contain the names of the persons for whom he wishes
to vote, and designate the office he desires them to fill." Does
not this ballot do that? It could not more plainly say that the
voter intended to vote for Joyce for recorder, and not Shannon,
because Shannon's name is erased; and it could not more plain-
ly say that he intended to vote for Stanton for council, because
his name is left on under that office. But as the Code of 1899,
chapter 3, section 85, says that whether a municipal election is
held according to it or the prior law, the election "shall be count-
ed and certified, and the result declared under the provisions of
this chapter," the new law tells how to count a ballot. It says
in section 34 that a voter "desiring to erase the name of any can-
didate from the ballot he intends to vote, or to vote for any one
else, may strike out the name so printed on said ballot, and

write in the blank space next following the name of the candidate or person for whom he desires so to vote. But if he fails to strike from said ballot the name printed thereon, the name written in said ballot shall alone be counted as to said office." This tells us that the written name controls for the office under which it is written, even if Shannon's name had been left; but to make it plainer it is erased. We might raise a question, if Stanton's name had been erased; but it was not.

Giving the writ of *mandamus* the force of *certiorari,* we hold that said ballot is a good ballot for Stanton, and we award a peremptory *mandamus* commanding the mayor, recorder and councilmen of said town to meet as a canvassing board and declare the result of said election between Stanton, King and Joyce for councilmen, counting said ballot for Stanton.

*Writ Awarded.*