BROOKS MILLER

*v.*

RICHARD L. BURLEY, *et al., etc. and* BESSIE ALLEN

(No. 13079)

Submitted on Rehearing January 25, 1972.

Decided on Rehearing March 7, 1972.

Dissenting Opinion March 29, 1972.

*Madden & Hughes, John T. Madden, G. Thomas Gall,* for plaintiff in error.

*Rickey & Chase, John K. Chase, J. K. Chase, Jr.,* for defendants in error.

HAYMOND, JUDGE:

In this mandamus proceeding, instituted in the Circuit Court of Marshall County, December 3, 1970, the petitioner, Brooks Miller, a citizen, taxpayer and legal voter of Marshall County, West Virginia, seeks a writ to compel the defendants, Richard L. Burley, Charles P. Helinski and John W. Myers, Commissioners of the County Court of Marshall County, West Virginia, and as such the Board of Canvassers of said county, to reconvene as the Board of Canvassers of that county and to ascertain the result of the general election held November 3, 1970 for the office of Sheriff of Marshall County, to record the result

of the election and to issue a certificate of election to the petitioner to the office of Sheriff of Marshall County.

Upon the petition and its exhibits the Judge of the Circuit Court in vacation, awarded a rule returnable December 17, 1970, requiring the defendants to show cause why a writ of mandamus should not be awarded against them as prayed for in the petition. On December 17, 1970, the petition of certain voters to intervene as parties was denied. Bessie Allen who, on November 10, 1970, was appointed by the County Court of Marshall County as Sheriff of Marshall County to fill the vacancy in that office resulting from the death of Robert L. Eller who died while occupying that office on October 23, 1970, and the County Court of Marshall County, upon their petition, were permitted to intervene as parties defendant. On February 11, 1971, a hearing was held at which the testimony of several witnesses was adduced, a written stipulation of facts was filed, and the case was submitted for decision upon the pleadings, the stipulation, and the testimony of the witnesses.

By its final judgment rendered February 26, 1971, the circuit court awarded a writ of mandamus which commanded the defendants, Richard L. Burley, Charles B. Helinski and John W. Myers, Commissioners of the County Court of Marshall County, and as such the Board of Canvassers of that county, to reconvene as the Board of Canvassers, to ascertain the result of the election for the office of Sheriff of Marshall County on November 3, 1970, to record the result of such election, and to issue a certificate of the result of the election to the person receiving the highest number of votes for that office at that election, and commanded the defendant, the County Court of Marshall County, to receive such certificate of the result of the election and to qualify the person shown to have received the highest number of votes for the office of sheriff at the election, if such person be otherwise qualified to serve as Sheriff of Marshall County, and to permit such person to give bond as required by law.

The Judge of the Circuit Court filed a written opinion giving the reasons for his decision and made the opinion a part of the record in this proceeding.

To the final judgment rendered by the circuit court February 26, 1971, this Court granted this writ of error March 29, 1971, upon the application of the defendant, Bessie Allen. Having obtained leave of this Court to move to reverse the judgment of the circuit court, she moved the Court to reverse the final judgment of the circuit court and this case was submitted for decision in this Court upon the record in the trial court, upon the motion to reverse, and upon the briefs and the oral arguments of the attorneys for the defendant Bessie Allen and of the attorneys for the petitioner Brooks Miller.

On June 22, 1971, this Court sustained the motion to reverse and held that the petitioner, Brooks Miller, was not legally elected in the general election of November 3, 1970 to the office of Sheriff of Marshall County, and that the County Court of Marshall County was legally authorized to appoint the defendant Bessie Allen as Sheriff for the unexpired term, and reversed the final judgment of the Circuit Court of Marshall County.

Upon the petition of Brooks Miller, this Court by order entered November 12, 1971, granted a rehearing of this case. On January 25, 1972, the case was submitted for decision upon the petition for rehearing, upon the motion of the defendant Bessie Allen to reverse the judgment of the circuit court, upon the record, including the pleadings, the stipulation of facts and the transcript of the evidence, and upon the briefs and the oral arguments of the attorneys in behalf of the respective parties.

There is little if any dispute in the material facts in this proceeding.

Robert L. Eller, the duly elected and acting Sheriff of Marshall County, West Virginia, died October 23, 1970 at approximately 3:45 o'clock in the afternoon as a result of injuries received in an automobile accident some time

in August of that year. His death created a vacancy in the office of sheriff and the next general election following his death was fixed by law and held on November 3, 1970. It appears from the written stipulation and the testimony of witnesses that the voters and members of the public, through news media, particularly newspapers of wide circulation published in nearby Wheeling and in Moundsville, were informed by the Prosecuting Attorney of Marshall County, who was so advised by an Assistant Attorney General of this State, that there would be no election for sheriff and that no write-in votes for that office should be counted at the general election on November 3, 1970, and also that the public and the voters were advised through the news media by an attorney of Marshall County to cast write-in votes for the office of sheriff at that election. These conflicting reports produced confusion and misunderstandings among the eligible voters and presumably prevented many eligible voters of Marshall County from casting votes for the office of sheriff at the general election. Despite the foregoing conflicting opinions by the news media and various persons, 1,087 eligible voters of the approximately 10,516 voters casting votes for other candidates at the general election cast 1,087 write-in votes for the office of sheriff. Of that number the petitioner received 557 write-in votes for the office of sheriff which was a majority of the 1,087 write-in votes cast for that office.

There was no announcement or notice by the County Court of the holding of the general election for the office of sheriff or of a vacancy in that office, and there was no newspaper advertising, no nomination or selection of a candidate by any political executive committee or by a chairman of any such committee, no stickers to be appended to the ballot by the petitioner, and only approximately ten days elapsed between the death of the sheriff and the succeeding general election on November 3, 1970. The official ballot for the election, which had been printed before the death of the sheriff and before the vacancy in that office occurred, contained no candidate for the office

of sheriff and no designated space was provided on the ballot for a write-in vote for the office of sheriff.

The County Court of Marshall County, sitting as a Board of Canvassers, refused to count the foregoing write-in votes for the office of sheriff or to certify the results of such write-in votes, although it was requested to do so by the petitioner. It also refused the request of the petitioner for a recount of the twenty-three precincts which did not report any returns for the office of sheriff.

Article IV, Section 7 of the Constitution of this State provides that: "The general elections of State and county officers, and of members of the legislature, shall be held on the Tuesday next after the first Monday in November, until otherwise provided by law. * * *. When vacancies occur *prior to any general election,* they shall be filled by appointments, in such manner as may be prescribed herein, or by general law, which appointments shall expire at such time after the next general election as the person so elected to fill such vacancy shall be qualified." (Emphasis supplied). Section 31, Article 1, Chapter 3, Code, 1931, as amended, pursuant to the foregoing article of the Constitution, provides that: "General elections shall be held in the several election precincts of the State on the Tuesday next after the first Monday in November of each even year." The quoted provision of the Constitution and of the statute are mandatory in character. *McCoy* v. *Fisher,* 136 W.Va. 447, 67 S.E.2d 543; *State ex rel. Lorentz* v. *Pierson,* 86 W.Va. 533, 103 S.E. 671.

The general election to fill the vacancy in the office of sheriff of Marshall County on November 3, 1970 existed by virtue of the clear and express mandate of the Constitution and the statute and the misleading and legally unsound and incorrect opinions of various persons and a few public officials to the contrary did not, and could not, erase, eliminate, cancel or render nonexistent the general election to fill the admitted vacancy in the office of sheriff on November 3, 1970 which occurred *prior* to the date of such general election.

The undisputed facts show that a general election was held at which more than 10% of the voters who voted for other candidates at the election cast valid write-in votes for the office of sheriff; and all the incorrect and misleading rumors that occurred before the general election on November 3, 1970, did not affect, impair, nullify or invalidate the result of that election at which the petitioner, Brooks Miller, received the substantial number of 557 valid write-in votes which should have been and must be counted for him. This result occurred notwithstanding the absence of the statutory notice of the election to fill the vacancy in the office of sheriff and the failure to provide space on the official ballot for the casting of write-in votes for that office, and notwithstanding the efforts of those who attempted to prevent an election to fill the vacancy in such office.

To any contention that there was not sufficient time between the death of the sheriff and the ensuing general election to conduct a valid election and to inform the electorate of the holding of the election a sufficient answer is that the election was held, that more than 10,500 votes were cast for offices other than the office of sheriff, and that as there was sufficient time to enable 1,087 voters to cast write-in votes for that office there was likewise sufficient time for all the other eligible voters to cast their votes for any person of their choice for his election as sheriff of the county had they been disposed to attend the polls and cast their votes.

Section 1, Article 10, Chapter 3, Code, 1931, as amended, provides that "Elections to fill vacancies shall be for the unexpired term, and shall be held at the same places, and superintended, conducted and returned, and the result ascertained, certified and declared, in the same manner, and by the same officers, as in general elections. The persons elected, having first duly qualified, shall enter upon the duties of their respective offices." The pertinent portion of Section 8 of Article 10 provides: that "Any vacancy occurring in the office of prosecuting attorney,

sheriff, assessor or county surveyor shall be filled by appointment by the county court *until the next general election at which time such vacancy shall be filled by election for the unexpired term.* Notice of an election to fill a vacancy in any of the offices named in this section shall be given by the county court, or by the president thereof in vacation, and published or posted in the manner prescribed in section six of this article." (Emphasis supplied). The notice to be given for such election shall be published once a week for two successive weeks in two qualified newspapers of opposite politics, published in the county. Though there was sufficient time between the death of the sheriff on October 23, 1970 and the general election on November 3, 1970 for two publications of a notice of the election, the county court and its president did not comply with the publication requirement of the foregoing statute. As the election was a general election as distinguished from a special election, however, the requirement of the statute was directory and no such notice was essential to the validity of the election.

In the *McCoy* case, this Court expressly held in Point 3 of the syllabus, in conformity to its prior decisions and the recognized weight of authority, that: "The failure of the tribunal to give the notice required by statute to be given by it of a general election at which vacancies in elective offices are to be filled does not invalidate a general election which is held at the time and the place fixed by law for the holding of such election." In the opinion, on the question of notice, this Court said: "As to the requirement that notice be given of the holding of an election there is a clear distinction between the case of a vacancy which is to be filled at a special election at a time and a place to be fixed by some officer or tribunal authorized by statute to call such special election, and the case in which statutory provisions require a vacancy to be filled at the next general election after the vacancies occurred. *Griffith v. County Court of Mercer County,* 80 W.Va. 410, 92 S.E. 676. In the *Griffith* case, the general rule with respect to a statutory requirement that a vacancy must be

filled at the next following general election is stated in this language: 'The general rule in such case, sustained by the great weight of authority, is, that where the statute itself provides, as it does in this state, for filling vacancies at the next general election, and requires notice thereof to be published, the failure to publish the notice will not affect the validity of the election.' "

The only irregularities in the election of November 3, 1970 to fill the vacancy in the office of sheriff were the failure of the county court to give the specified notice and to provide the space on the ballot for a write-in vote for the office of sheriff. All the other requirements for the general election were completely complied with and satisfied and valid printed official ballots for use in the election were provided. Certain it is that the failure of the county court to satisfy the relatively unimportant requirements of notice and space on the ballots could not, and did not, invalidate the election to fill the vacancy in the office of sheriff. The irregularities of failure to give the statutory notice and to provide space on the ballot to enable a voter to cast a write-in vote were expressly considered and resolved in the *McCoy* case by this language in Point 4 of the syllabus: "A mere irregularity by officials charged by statute with the preparation of official election ballots, which does not deprive the voters of the right to cast their ballots, and have them counted, for the candidates of their choice, or does not affect the result of the election, will not destroy the efficacy of the ballots or invalidate the election, unless the statute, expressly or by necessary implication, provides that the irregularity shall render the ballots or the election invalid." No statute of this State so provides for the failure to give the notice or for the failure to provide the space for a write-in vote. In *Williamson* v. *Musick*, 60 W.Va. 59, 53 S.E. 706, cited in the *McCoy* case, this Court held in Point 4 of the syllabus that: "Irregularities in the conduct of an election are generally to be disregarded, unless the statute declares that they shall be fatal to the election, or unless

they are such in themselves as to change, or to render it impossible to ascertain, the result."

It is well established by the decisions of this Court that a voter should not be disfranchised merely because of irregularities attributable to officials of the election. *Gibson v. Bower*, 137 W.Va. 462, 73 S.E.2d 817; *Burrows v. Bower*, 137 W.Va. 459, 73 S.E.2d 825; *State ex rel. Hammond v. Hatfield*, 137 W.Va. 407, 71 S.E.2d 807; *Hatfield v. Board of Canvassers of Mingo Co.*, 98 W.Va. 41, 126 S.E. 708; *Morris v. Board of Canvassers of City of Charleston*, 49 W.Va. 251, 38 S.E. 500.

It is also well established by the decisions of this Court that though mistakes and irregularities in elections made by the voter may often destroy his ballot, those of officials do not affect the election if a fair election has been held. *State ex rel. Heavener v. Perry*, 155 W.Va. 353, 184 S.E.2d 136; *State ex rel. Gengo v. Cudden*, 153 W.Va. 190, 168 S.E. 2d 541; *State ex rel. Hammond v. Hatfield*, 137 W.Va. 407, 71 S.E.2d 807; *Hatfield v. Board of Canvassers of Mingo Co.*, 98 W.Va. 41, 126 S.E. 708; *Morris v. Board of Canvassers of City of Charleston*, 49 W.Va. 251, 38 S.E. 500.

In *State ex rel. Heavener v. Perry*, 155 W.Va. 353, 184 S.E.2d 136, Point 1 of the syllabus contains this quotation from Point 2, syllabus, *Morris v. Board of Canvassers of City of Charleston*, 49 W.Va. 251, 38 S.E. 500: "As to mistakes and irregularities in elections, a distinction exists between those made by the voter and those made by officers of election. In the former case such mistakes and irregularities may often destroy the ballot, while those of officers do not affect the election, if a fair election has been held."

As previously indicated, Article IV, Section 7, of the Constitution of this State, relating to general elections of state and county officers and members of the Legislature, provides that elections to fill vacancies shall be for the unexpired term and that when vacancies occur prior to any general election they shall be filled by appointment which appointment shall expire at such time after the next

general election as the person so elected to fill such vacancy shall be qualified. It should be emphasized that the vacancies to be filled for the unexpired term are vacancies that occur *at any time* prior to any general election and that the Constitution contains no provision that such vacancy must occur at any specified time before such general election. If the framers of the Constitution had intended to fix a cutoff date or a deadline of any specified time for the occurrence of a vacancy before a general election to be filled for the unexpired term at such election, as has been contended, they could and undoubtedly would have provided such a specified period of time for the occurrence of the vacancy before a general election. The omission of any such specified time shows clearly that the time of the occurrence of a vacancy before a general election is utterly immaterial and that, regardless of the time of the occurrence of the vacancy, it must be filled at such election for the unexpired term of the office in which the vacancy occurs. The foregoing language of the Constitution is clear and unambiguous and must be complied with, and Section 1, Article 10, Chapter 3, Code, 1931, as amended, provides that elections to fill vacancies shall be for the unexpired term and shall be held in the same place and superintended, conducted and returned, and the result ascertained, certified and declared, in the same manner and by the same officers as in general elections.

The filling of a vacancy for the unexpired term at the next general election following such vacancy, regardless of how long or how short the time of the occurrence of the vacancy before the general election, is unlike the nomination of a candidate to be voted for at a general election. A candidate to be voted for at a general election must be nominated at a primary election and must file his certificate of his candidacy for the office sought by him within a specified time limit, or, if no candidate for such office is so nominated, he may be certified as a candidate by the executive committee of his political party on or before a specified date, or, if not so certified by the executive

committee, he may be certified by the chairman of such executive committee on or before a specified date. No question of a nomination of any candidate is involved in this case. The petitioner was not a nominee or a candidate in the sense that he sought to have his name as such placed upon the official ballot; instead he was the recipient of votes cast for him by voters writing his name upon the official ballot and in that manner voting for him for the office of sheriff.

Under the provisions of Article IV, Section 7, of the Constitution of this State, and of Section 1, Article 10, Chapter 3, Code, 1931, as amended, any vacancy in a state or county office which occurs at any time before a general election shall be filled by appointment which shall expire at such time after the next general election as the person elected to fill such vacancy shall be qualified and the vacancy for the unexpired term shall be filled at such general election. By virtue of these constitutional and statutory provisions, the County Court of Marshall County could have appointed the defendant, Bessie Allen, as sheriff until the general election but it was without authority to appoint her to that office after the vacancy was filled for the unexpired term at the general election on November 3, 1970.

Though Section 2, Article 6, Chapter 3, Code, 1931, as amended, provides in part, that "If, upon any ticket, there be no candidate or candidates for a designated office, a blank space equal to the space that would be occupied by such name or names, if they were printed thereon, with the blank space herein provided for, shall be left.", the omission of space on the ballot used in the general election on November 3, 1970, for the substitution of the name of a person for whom the voter wished to vote, did not impair the right of any qualified voter to vote for a person whose name did not appear upon the ballot, or affect the result of the election, and the quoted provision of the statute should be considered as directory rather than mandatory in character and effect. This Court so held in the *McCoy* case.

It is clear beyond question that any qualified voter in Marshall County had the right to vote for any person for the office of sheriff to fill the vacancy in that office for the unexpired term at the general election on November 3, 1970, and to exercise that right, as 1,087 voters did, by substituting the name of the person for whom he desired to vote by writing it in the proper place on the ballot and making a cross mark at the left of the name so written. In the *McCoy* case this Court said that it is well settled in this State that in selecting a person for any office, state, county or municipal, a qualified voter may cast his ballot for a person whose name does not appear as a candidate on the official ballot at a general election. *Brown* v. *Carr*, 130 W.Va. 455, 43 S.E.2d 401; *Brannon* v. *Perkey*, 127 W.Va. 103, 31 S.E.2d 898, 158 A.L.R. 631; *State ex rel. Kincaide* v. *Canvassing Board*, 85 W.Va. 440, 102 S.E. 104. In Point 2 of the syllabus in the *Kincaide* case this Court said: "The intention to exercise the right to vote for persons other than those whose names are printed on such official ballots the elector may manifest by obliterating or erasing the name of the candidate as it appears on the ballot for such office, and, in lieu thereof, writing the name of the candidate or person preferred by him, either immediately under the name erased, or on the margin opposite it, but not on the reverse side of the ballot." In the earlier case of *Doll* v. *Bender*, 55 W.Va. 404, 47 S.E. 293, in expressly recognizing and emphasizing the right of a voter to cast a write-in vote, this Court said in Point 3 of the syllabus: "The provision in code 1899, chapter 3, section 34, that where a name is substituted for one on a ballot it must be written in the space below the printed name, is directory. Though the name is not there written, the vote will be counted for the written name for the office for which it is plainly intended." In the *Doll* case the voter placed a mark of identification on the ballot which constituted a criminal offense, but notwithstanding such offense, this Court held the ballot to be valid and that it should be counted.

In addition to the right recognized in the above cited cases, the right of a voter to vote for and elect a person to fill a vacancy is conferred upon a qualified voter by Section 5, Article 6, Chapter 3, Code, 1931, as amended, which provides that: "If the voter desires to vote for any person whose name does not appear on the ticket, he may substitute the name by writing it with black lead pencil or other means in the proper place, and making a cross mark in the blank space at the left of the name so written." The quoted provision should satisfy and conclusively refute any challenge to the existence of any statutory authority for an election to fill a vacancy in a public office for an unexpired term based on write-in votes, or any contention that write-in votes could not be cast for the office of sheriff for the unexpired term because the official ballots were required to have been prepared and printed more than two weeks before the death of Sheriff Eller which created a vacancy in that office and because such official ballots did not contain the name of any candidate for sheriff or did not provide a space for a voter to write in the name of the person for whom he desired to vote. Of course the ballot must have been printed before a voter could substitute the name of a person on it and the date the ballot was printed, provided it was printed in time for use at the election, is manifestly immaterial and of no importance whatsoever with respect to the question here involved. That the ballots had been printed before the creation of the vacancy is also immaterial and has no bearing upon the validity of a write-in vote placed upon the ballot in the manner provided by statute by a qualified voter who desired to vote for a person to fill the vacancy in the office of sheriff.

There is no contention that the 557 voters who cast write-in votes for the petitioner for the office of sheriff were not qualified voters or that any doubt exists as to their intention to cast their votes for the petitioner. To cast a valid write-in vote for a person to fill a vacancy in a public office, it is not necessary that the name of any

candidate should appear on the ballot used at such election. The name of no candidate for the office of justice of the peace and of no candidate for the office of constable appeared on the ballot considered in the *McCoy* case, and no candidate for a municipal office appeared on the ticket used in the municipal election considered in *Brannon* v. *Perkey*, 127 W.Va. 103, 31 S.E.2d 898, 158 A.L.R. 631.

In the *Brannon* case, in sustaining the validity of the election of a person, not a candidate, to the office of city attorney to be filled at a municipal election at which only 37 persons, out of a total of 1,380 persons voting for a candidate for another office participated, voted for any person for the office of city attorney by writing his name on the official ballot on which the name of no person as a candidate for that office appeared, and of the 37 votes 24 were cast for the petitioner in that case, this Court unanimously held in Point 1 of the syllabus that: "Where no nomination has been made for an elective office to be filled at a municipal election to which the general election laws of the State are applicable, and only a small number of voters, who otherwise participated in said election, write the names of eligible and qualified persons on official ballots so as to show an intention to cast a vote for the named persons and the designated office, the person whose name is so written on the greatest number of ballots voted is duly elected to such office." In the *Brannon* case this Court said:

"If no nominations are made for a designated office, the board of ballot commissioners is required to provide blank spaces on the ballots of sufficient size that the names of nominees can be printed therein. * * *. A voter may cast a valid ballot by writing the name of the person for whom he desires to vote in the space immediately below the name of an opposing candidate for the same office. * * *.

"It is further provided: 'If a voter desires to vote for any person whose name does not appear on the ticket, he may substitute the name by writing it with a black [lead] pencil or other means in the proper place, and

making a cross mark in the blank space at the left of the name so written.' * * *. The statutory provision just quoted is a legislative recognition of the right of a voter to select some person other than those nominated for office and whose name is not printed on the ballot. It is unnecessary to the validity of a vote cast that a cross mark appear in the space to the left of the name so written. *Rollyson v. Court,* 113 W.Va. 167, 167 S.E. 83. A vote cast by writing in the name of a person must be counted and returned as a vote if the intention of the voter can be ascertained therefrom. *State* v. *Canvassing Board,* 85 W.Va. 440, 102 S.E. 104. See *Reed v. State,* 234 Ala. 306, 174 S. 498; *Sanner v. Patton,* 155 Ill. 553, 40 N.E. 290; McCrary on Elections, 4th Ed., Sec. 700.

"We conclude that a legal voter may cast a ballot for any qualified and eligible person by writing the name of such person on the official ballot at such place and in a manner that the intention of the voter is indicated as to the person and office for which the vote is cast." The above quotation should refute any contention to the effect that no statute of this State authorizes the election of a person by write-in votes.

The decision in this case is controlled by the unanimous decisions of this Court in the *McCoy* case and in the *Brannon* case and its decisions should have been applied and followed in this case by the Board of Canvassers and the County Court of Marshall County as they were by the Circuit Court of Marshall County and they should not have been ignored and disregarded. Under the holding of this Court in those cases the election of the petitioner, Brooks Miller, who received 557 valid write-in votes, or approximately five percent of all the votes cast for any other candidate at the general election, should have been certified by the Board of Canvassers and recognized by the County Court.

This Court held in Point 5 of the syllabus in the *McCoy* case that: "When no candidates have been nominated to fill a vacancy in an elective office, which vacancy is to be

filled at a general election, as required by law, and only a few of the total number of qualified electors, who voted at the election for candidates for various other offices, vote for eligible and qualified persons to fill a vacancy in a particular office by writing the names of such persons and the designation of the office on official ballots used at the election, a person who receives the greatest number of the few votes cast is duly elected to fill the vacancy in such office." The approximately five percent vote for the petitioner, Brooks Miller, of all the votes cast in the general election on November 3, 1970, as well as more than fifty percent of the votes cast for the office of sheriff, was almost twice the less than three percent vote cast for a person for the office of city attorney in the *Brannon* case in which this Court unanimously held that the person who received 24 of the 37 votes cast for the office of city attorney was elected to the office; and the percentage of the votes cast for the petitioner apparently exceeded the percentage of the votes cast for McCoy and Posey who, this Court unanimously held, were by such vote elected to the respective offices of justice of the peace and constable.

The present case is stronger with respect to the election of the petitioner to fill the vacancy in the office of sheriff than the result reached in the *McCoy* case which was that McCoy and Posey were elected by only 20 votes and 8 votes respectively. Here, knowledge of the death of the sheriff and of the vacancy in that office was widespread and general among the voters of the county who were clearly aware of the existence of the vacancy in that office and who by law were charged with notice that it was required to be filled at the election to be held on November 3, 1970, approximately ten days after his death. In the *McCoy* case the vacancies in the office of justice of the peace and of constable had been filled by appointments until the next general election several months before such election occurred. Those offices were actually filled from the time of the appointment until the election, and the time element was such that the voters of the

magisterial district, or many of them, presumably over-looked or forgot the existence of the existing vacancies. In that instance, there was no official notice of the general election but it is obvious that there was a greater need for a notice in the *McCoy* case than in the instant case. The lack of notice, however, which presumably restricted the number of persons who voted for the offices of justice of the peace and constable, did not affect the validity of their election.

As a general rule, when a rehearing is granted, the status of the case is the same as though no hearing had occurred. The granting of a rehearing withdraws an opinion previously rendered and destroys its force and effect unless it is subsequently adopted by the same tribunal. *State ex rel. Moats* v. *Janco*, 154 W.Va. 887, 180 S.E.2d 74. Inasmuch as the original holding of this Court reversing the judgment of the circuit court is set aside and reversed on this rehearing the majority opinion and the dissenting opinion heretofore filed in this case are withdrawn and excluded from the record and are held for naught.

The motion to reverse is denied and the judgment of the Circuit Court of Marshall County awarding the writ of mandamus as prayed for in the complaint, as amended, is affirmed.

> *Motion to reverse denied;*
> *judgment affirmed.*

CALHOUN, PRESIDENT, dissenting:

Respectfully, I dissent from the decision of the Court in this case. The contentions of counsel for Brooks Miller made by brief and oral argument, the decision of the Circuit Court of Marshall County, and the decision of the Court in the present case have been based almost wholly upon *McCoy* v. *Fisher*, 136 W.Va. 447, 67 S.E.2d 543, which hereafter in this opinion may be referred to merely as the *McCoy* case. I consider that case palpably untenable from a legal standpoint. It should be overruled by the Court before it forms the basis of another unfortunate and

farcical situation such as that which has resulted from the decision in the present case.

"The system of elections followed in the United States was unknown to the common law. The subject is entirely statutory, and the exercise of the right of suffrage is in all states regulated by constitutional and statutory provisions." 25 AM. JUR. 2d, *Elections,* Section 4, page 695. To the same effect, see 29 C.J.S., *Elections,* Section 7(1), page 36 et seq. "The right to vote may be exercised only on compliance with such statutory requirements as have been set up by the legislature." 29 C.J.S., *Elections,* Section 7(1), page 38. "The right to vote is not an inherent or absolute right generally reserved in bills of rights, but its possession is dependent upon constitutional or statutory grant." 6 M.J., *Elections,* Section 2, page 564.

The following prior decisions of this Court sustain the general proposition that the manner of conducting elections of public officials and the manner in which the right to vote in elections may be exercised are prescribed by statutes which implement the limited provisions of the Constitution of West Virginia relating to the subject of elections: *State ex rel. Brewer* v. *Wilson,* 151 W.Va. 113, 120-21, 150 S.E.2d 592, 597; *State ex rel. Zickefoose* v. *West,* 145 W.Va. 498, 524, 116 S.E.2d 398, 412 (Judge Haymond's dissenting opinion); *Meisel* v. *O'Brien,* 142 W.Va. 74, 77, 93 S.E.2d 481, 483; *Simms* v. *The County Court of Kanawha County,* 134 W.Va. 867, 871, 61 S.E.2d 849, 851; *Evans* v. *Charles,* 133 W.Va. 463, 468, 56 S.E.2d 880, 882; *State ex rel. Robertson* v. *The County Court of Kanawha County,* 131 W.Va. 521, 524-25, 48 S.E.2d 345, 348; *State ex rel. Forsythe* v. *The County Court of Cabell County,* 131 W.Va. 570, 576, 48 S.E.2d 412, 416; *State ex rel. Lawhead* v. *County Court of Kanawha County,* 129 W.Va. 167, 170, 38 S.E.2d 897, 899; *Brannon* v. *Perkey,* 127 W.Va. 103, 107, 31 S.E.2d 898, 901; *Booten* v. *Pinson,* 77 W.Va. 412, 421-22, 89 S.E. 985, 989-90; *Morris* v. *Board of Canvassers of City of Charleston,* 49 W.Va. 251, pt. 4 syl., 38 S.E. 500; *Halstead* v. *Rader,* 27 W.Va. 806, 808-09.

Obviously there was at common law no right to cast a "write-in vote." No such right is afforded by any provision of the Constitution of West Virginia. To the extent that such a right exists, the creation of the right must be found in statutes of this state which prescribe the manner of holding elections and the manner of voting. This Court has properly held that such a right does not exist in the absence of a statute creating such right. Section 11 of Article IV of the Constitution of West Virginia provides that the "legislature *shall* prescribe the manner of conducting and making returns of elections, * * *." (Italics supplied.) This Court has held that, by reason of the constitutional provision quoted in part immediately above, the legislature has been given wide powers "to make all reasonable regulations and restrictions as to preparation of ballots and the conduct and returns of elections." *Morris* v. *Board of Canvassers of City of Charleston,* 49 W.Va. 251, pt. 4 syl., 38 S.E. 500. In *State ex rel. Lewis* v. *Board of Ballot Commissioners of Wood County,* 82 W.Va. 645, 649, 96 S.E. 1050, 1052, the Court made the following statement: "The primary election *statute* makes no provision for writing in the name of a candidate on a party ballot, as may be done on the official ballot in a general election." (Italics supplied.) This holding clearly states the fundamental legal proposition that, in the absence of a constitutional inhibition, the power of the legislature to prescribe the manner of voting in elections is plenary.

Pertinent statutes of this state provide for write-in votes at general elections in two situations. I am not aware of any other statute authorizing write-in votes to be cast at a general election. No such statute has been called to my attention either by counsel or by the Court's opinion in this case.

Code, 1931, 3-6-5 (3), as amended, provides that a voter may vote for a person other than any candidate whose name appears as such on the official ballot for a general or special election. Generally speaking, this statute permits a voter, by a write-in vote, to "substitute" the name of a person of his choice for the name of any person who

is disclosed by the official ballot to be a duly nominated candidate for office at the general election.

The other statute which provides for casting write-in votes at a general election is Code, 1931, 3-6-2, as amended, which deals with preparation of official ballots for general elections. By the following language, the statute makes provision for write-in votes on official general election ballots in any instance in which there is no duly nominated candidate for a particular office: "* * * The name of each candidate shall be printed in a space defined by ruled lines, and with a black square on its left enclosed by heavy dark lines. *If, upon any ticket, there be no candidate or candidates for a designated office, a blank space equal to the space that would be occupied by such name or names, if they were printed thereon, * * * shall be left.*" (Italics supplied.)

All prior decisions of this Court which are cited in the *McCoy* case as authority for casting write-in votes at a general election fall into one or the other of the two statutory categories referred to immediately above. Cases within the first of the two categories are as follows: *Brown* v. *Carr*, 130 W.Va. 455, pt. 1 syl., 43 S.E.2d 401; *Rollyson* v. *County Court of Summers County*, 113 W.Va. 167, pt. 2 syl., 167 S.E. 83; *State ex rel. Kincaide* v. *Canvassing Board*, 85 W.Va. 440, pt. 2 syl., 102 S.E. 104; *Stanton* v. *Wolmesdorff*, 55 W.Va. 601, 603-604, 47 S.E. 245, 246-47.

*Brannon* v. *Perkey*, 127 W.Va. 103, 31 S.E.2d 898, was based on the second of the two statutory categories in which provision is made for write-in votes. Neither of these two statutory categories would sustain the propriety or legality of the write-in votes for sheriff in the instant case, for the reason that both categories contemplate an official ballot and sample ballots which must be prepared and printed by the board of ballot commissioners at least thirty days before the general election. Code, 1931, 3-1-21, as amended, and Code, 1931, 3-5-19, as amended.

I would overrule the *McCoy* case, primarily because the Court held in that case that a constable and a justice of the peace for Slab Fork District of Braxton County were elected by write-in votes in circumstances in which write-in votes were not legally authorized. Vacancies in both official positions had occurred and the vacancies had been properly filled by appointment of persons to fill the vacancies. Ample time remained thereafter for both the appointees or other persons to have been nominated as candidates for election and to have had their names appear as candidates on the official ballot at the general election. Ample time remained for giving notice to the electorate, pursuant to pertinent statutory provisions, that an election to fill these positions would be held as a part of the general election. Ample time remained to prepare the official ballot in such a manner as to disclose to voters that the positions of justice of the peace and constable would be filled by election at the general election. This Court nevertheless held that a man was elected to the position of justice of the peace by having received twenty "write-in votes" and that another man was elected to the position of constable by having received eight "write-in votes." Very respectfully I assert with confidence that no law of this state and no pertinent law of any other jurisdiction can be found to sustain the legal validity of the *McCoy* case. I confidently assert that no pertinent law, except the *McCoy* case, can be found anywhere to sustain the validity of the Court's decision in the present case.

In the present case, the death of Sheriff Robert L. Eller occurred during the afternoon of October 23, 1970, approximately one week and three and one-half days before the polls opened for the general election which was held on Tuesday, November 3, 1970. The fact of the death of Sheriff Eller was promptly and widely reported to residents of Marshall County by the news media, including radio and television broadcasts and by newspapers, including The Moundsville Daily Echo, a newspaper published at Moundsville, in Marshall County, and by a newspaper

published at Wheeling and widely circulated and read within Marshall County.

On or before October 27 or 28, 1970, the county court consulted G. Thomas Gall, Prosecuting Attorney of Marshall County, in relation to legal questions created by the death of Sheriff Eller and the consequent vacancy created in the office of sheriff at a time so near the date fixed by law for holding the general election. Gall in turn consulted Honorable William F. Lockhart, as assistant to the attorney general of this state. Gall and Lockhart concurred in a legal opinion that, in the circumstances, valid write-in votes could not be cast at the upcoming general election and that the vacancy for the unexpired term could be filled only by an appointment to be made by the county court. As the majority opinion states, a Moundsville attorney took it upon himself to announce that valid write-in votes could be legally cast at the general election. In these circumstances, the news media merely reported the conflicting legal opinions and the consequent state of confusion and uncertainty. Immediately before the general election, various "candidates" became active in their efforts to induce voters to cast "write-in votes" at the general election.

At the general election held on November 3, 1970, 10,516 ballots were cast by voters of Marshall County, including 1,087 "write-in votes" cast for 43 persons for the office of sheriff in 36 of the 59 voting precincts of the county. The remaining 23 voting precincts reported no votes for the office of sheriff. Twenty of the 43 persons received one vote each. Thirty-five of the 43 persons received fewer than 5 votes each. Brooks Miller, the appellee in this case, received 557 of the 1,087 "write-in votes" cast for the office of sheriff, which was the highest number of votes cast for the 43 persons for whom such votes were cast.

The first point of the syllabus in this case, quoting the third point of the syllabus of the *McCoy* case, in relation to giving notice of an election to fill a vacancy, appears

to be based largely upon *Griffith* v. *County Court of Mercer County,* 80 W.Va. 410, 92 S.E. 676. That the *Griffith* case is clearly distinguishable from the *McCoy* case and the present case is demonstrated by the language of the fourth point of the syllabus of the *Griffith* case, which is as follows:

> "Failure of the county court to publish notice of an election to fill a vacancy in the office of commissioner, as provided in section 9, chapter 4, Code, does not avoid the election, *if it appears that candidates for such office were regularly nominated at a primary election, and were voted for at the general election by the great body of voters.*" (Italics supplied.)

The second point of the syllabus of the present case, quoting the second point of the syllabus of *Morris* v. *Board of Canvassers of City of Charleston,* 49 W.Va. 251, 38 S.E. 500, is clearly not in point. In the first place, that case dealt with an election for which official ballots were provided. On the contrary, one of the primary questions involved in the present case is whether a lawful election for sheriff was held. The rule of the *Morris* case, as I understand it, is a rule formulated primarily as a guide by which to determine the intent of the voter as disclosed by his ballot. Cases in this category are cited in the application of the language of Code, 1931, 3-6-5, as amended, which specifies various guidelines for ascertainment of the intention of a voter as disclosed by his ballot cast at a general election, a portion of which is as follows: "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice." In the present case, we are not called upon to consider the intent of voters as disclosed by ballots, nor are we concerned with mere "mistakes and irregularities" which may "destroy the ballot." On the contrary, the present case involves only questions of law, including the question whether an election for sheriff was held and whether, in any event, "write-in votes" were legally permissible and valid.

The fourth point of the syllabus of this case states that, pursuant to Code, 1931, 3-6-5 (3), as amended, a voter may "substitute" the name of a person for whom he desires to vote in lieu of the name of a candidate whose name appears on the ballot to be a duly nominated candidate. This syllabus point is patently inapposite and can have no conceivable application to the legal questions presented for decision in the present case. There has been no contention that any of the 1,087 voters *substituted* the name of a person for whom he desired to vote for the office of sheriff. These voters did not substitute names. They merely *inserted* names on official ballots which made no provision whatsoever for election of a sheriff for the unexpired term.

The fifth point of the syllabus, as applied to the present case, is not based upon any statute or legal precedent except upon the glaringly unsound holding of the *McCoy* case.

The Court in this case, as in the *McCoy* case, has made the point that, by reason of the provisions of Section 7 of Article IV of the Constitution of West Virginia and the provisions of Code, 1931, 3-10-1, as amended, the voters of Marshall County were charged with knowledge of the fact that the vacancy in the office of sheriff would be filled at a general election to be held in that county on Tuesday next after the first Monday in November. That the voters of Marshall County had knowledge of the fact that a general election was to be held is evidenced by the fact that 10,516 of them cast ballots in the general election involved in this case. The fact that the voters of Marshall County had no knowledge that an election would be held at the same time for the office of sheriff is evidenced by the fact that only 1,087 voters undertook to cast votes for election of a sheriff. As I shall undertake to demonstrate subsequently in this opinion, the Court erroneously overlooks the fact that an election to fill a vacancy in the office of sheriff is a "special election", though properly held and conducted in connection with a general election.

The Court erroneously holds in this case that the voters of Marshall County were charged with knowledge that, at the general election, a sheriff would be elected by "write-in votes" for the unexpired term. This holding of the Court is based primarily upon the following language of Section 7 of Article IV of the Constitution of West Virginia: "* * * When vacancies occur prior to any general election, they shall be filled by appointments, *in such manner as may be prescribed herein, or by general law,* which appointments shall expire at such time after the next general election as the person so elected to fill such vacancy shall be qualified." (Italics supplied.) The Court treats the foregoing constitutional provision as self-executing.

It is obvious that the framers of the Constitution contemplated that the limited provisions therein pertaining to general elections would be implemented by statutes providing for the procedure for holding general elections, for both regular terms and for unexpired terms of office. The implementing statutes are found in the very extensive and detailed provisions of Chapter 3, Code, 1931, as amended. These statutory enactments have been made, in a great measure at least, pursuant to the following provisions of Section 8 of Article IV of the Constitution of West Virginia: "The legislature, in cases not provided for in this Constitution, *shall prescribe, by general laws, the terms of office,* powers, duties and compensation of all public officers and agents, and *the manner in which they shall be elected,* appointed and removed." (Italics supplied.) The constitutional provisions to which reference has been made in this case do not in any sense undertake to specify by what procedure a vacancy in an office of sheriff shall be filled by election at a general election. We must look to the statutes, therefore, for guidance in determining the procedure by which one may be elected to fill the unexpired term of the office of sheriff.

We should not overlook the following clear and mandatory language of Section 2 of Article IV of the Constitution of West Virginia: "In all elections by the people,

the mode of voting shall be by ballot; * * *." In the present case, the Court necessarily has held that this mandatory constitutional provision was followed, notwithstanding the fact that the official ballot for the general election involved in this case made no provision of any sort for an election of a sheriff. The official ballot disclosed nothing from which it could be inferred that it afforded any basis or means whatsoever for electing a sheriff for the unexpired term.

Under the provisions of Code, 1931, 3-10-8, as amended, it is the duty of a county court or its president to publish a notice that an election will be held to fill a vacancy in an office of sheriff for an unexpired term. Such a notice, under Code, 1931, 3-10-6, as amended, must be "published prior to such election as a Class II-0 legal advertisement in compliance with the provisions" of Article 3 of Chapter 59, Code, 1931, as amended. Code, 1931, 59-3-2(b), as amended, provides that a Class II-0 legal advertisement shall be published once a week for two successive weeks in *two* qualified newspapers *"of opposite politics* in the publication area; * * *." (Italics supplied.) The publication area in the present case, of course, was Marshall County. Code, 1931, 59-3-1(a) (3), as amended, provides: " 'Once a week for two successive weeks' means two publications of a legal advertisement in a qualified newspaper occurring within a period of fourteen consecutive days with at least an interval of six full days within such period between the date of the first publication and the date of the second publication."

The record in this case fails to disclose whether there are two newspapers of opposite politics published in Marshall County or whether, if there are two such newspapers, one is or is not a weekly newspaper. The term "qualified newspaper" is defined in Code, 1931, 59-3-1(b), as amended. The West Virginia Blue Book, 1971, at pages 549 and 551, discloses that Moundsville Daily Echo is a Democratic daily newspaper published at Moundsville and that The Cameron News is a Republican weekly newspaper published on Wednesday of each week at Cameron,

in Marshall County. The first publication of The Cameron News after the death of Sheriff Eller would have appeared on Wednesday, October 28, 1970, and the next or second publication would have been on Wednesday, November 4, 1970, one day after the date of the general election involved in this case. The record in this case, therefore, fails to disclose that the required publication could have been made in the interval between the date of the death of Sheriff Eller and the date of the general election, even if it be assumed that pertinent statutes would sustain the legality of a publication of notice in any event at a time so near to the date fixed by law for holding the general election.

Code, 1931, 3-10-8, as amended, relating to elections to fill vacancies in offices for unexpired terms, contains the following language: "Notice of an election to fill a vacancy in any of the offices named in this section shall be given by the county court, or by the president thereof in vacation, * * *. *Nomination of candidates to fill any such vacancy shall be made* in the manner prescribed in said section six of this article for nominating candidates to fill a vacancy in the office of the clerk of the circuit court." (Italics supplied.) Code, 1931, 3-10-6, as amended, relating to vacancies in the office of a clerk of a circuit court, provides that the circuit court, or the judge thereof in vacation, shall fill the vacancy by appointment of a person to hold the office until the next general election or until a successor is elected and qualified. Thereafter the statute contains the following language:

> "The circuit court, or the judge thereof in vacation, shall cause a notice of such election to be published prior to such election as a Class II-O legal advertisement in compliance with the provisions of article three * * *, chapter fifty-nine of this Code, and the publication area for such publication shall be the county involved. If the vacancy occurs before the primary election held to nominate candidates to be voted for at the general election, at which any such vacancy is to be filled, *candidates to fill such vacancy shall be nominated* at such primary election in accordance with the

time requirements and the provisions and procedures prescribed in article five of this chapter. *Otherwise, they shall be nominated by the county executive committee* in the manner provided in section nineteen, article five, of this chapter, as in the case of filling vacancies in nominations, *and the names of the persons, so nominated and certified to the clerk of the circuit court of such county, shall be placed upon the ballot to be voted at such next general election.*" (Italics supplied.)

The statutory language quoted above seems clearly to contemplate that notice of an election to fill a vacancy in an office of sheriff for an unexpired term shall be published sufficiently in advance of the general election to permit nomination of candidates for such office by one of the procedures prescribed by statute for the making of nominations of candidates in order that the names of such candidates, or lack of such duly nominated candidates, may be made to appear on the general election ballot which, pursuant to the requirement of Code, 1931, 3-1-21, as amended, must be printed by the board of ballot commissioners "at least thirty days before the date of" the general election.

Code, 1931, 3-10-1, as amended, contains the following language which strongly tends to substantiate the view that an election to fill the office of sheriff for an unexpired term contemplates an official general election ballot prepared, printed and published at least thirty days before the day of the general election: "Elections to fill vacancies shall be for the unexpired term, and shall be held at the same places, *and superintended, conducted and returned, and the result ascertained, certified and declared, in the same manner,* and by the same officers, *as in general elections.*" (Italics supplied.) The statutory language quoted above tends to demonstrate that if an election to the office of sheriff had been legally held on November 3, 1970, it would have been a "special election" as to that office conducted "in the same manner * * * as in general elections."

In relation to the distinction between a regular or general election and a special election, the following language

appears in 25 AM. JUR. 2d, *Elections,* Section 3, pages 692-94.

"A regular or general election is one that recurs at stated intervals as fixed by law, without any superinducing cause other than the passage of time, and is held to select an officer to succeed to the office on the expiration of the full term of the incumbent. A special election, on the other hand, is one that arises from some exigency or special need outside the usual routine, such as to fill a vacancy in office, * * *.

"Under some constitutional and statutory provisions it is held that a general and a special election may be held on the same day and at the same place. * * *.

"Distinctions between special and general elections are concerned only with the steps taken in advance of the election, such as giving notice of time, place of holding, and objects of the election. * * *."

In *Eakle* v. *Board of Education,* 97 W.Va. 434, 441, 125 S.E. 165, 168, the Court made the following statement:

"A general election may be said to be an election held for the choice of National, State, judicial, district, municipal, county or township official required by law to be held regularly at a designated time, *to fill a new office or a vacancy in an office at the expiration of the full term thereof.*" (Italics supplied.)

See also *State ex rel. Pinson* v. *Varney,* 142 W.Va. 105, pt. 2 syl., 96 S.E.2d 72; 29 C.J.S., *Elections,* Section 1 (2), page 15.

The following language appears in 29 C.J.S., *Elections,* Section 1 (2), page 15: "While it has been held that an election to fill a vacancy is not a general election, *by virtue of statute an election to fill a vacancy may be a general election.*" (Italics supplied.) The *McCoy* case is the only authority cited in the footnote in support of the italicized portion of the quotation appearing immediately above.

In relation to the provisions of Section 7 of Article IV of the Constitution of West Virginia, the Court made the following sweeping statement in its opinion:

"It should be emphasized that the vacancies to be filled for the unexpired term are vacancies that occur *at any time* prior to any general election and that the Constitution contains no provision that such vacancy must occur at any specified time before such general election. If the framers of the Constitution had intended to fix a cutoff date or a deadline of any specified time for the occurrence of a vacancy before a general election to be filled for the unexpired term at such election, as has been contended, they could and undoubtedly would have provided such a specified period of time for the occurrence of the vacancy before a general election. The omission of any such specified time shows clearly that the time of the occurrence of a vacancy before a general election is utterly immaterial and that, regardless of the time of the occurrence of the vacancy, it must be filled at such election for the unexpired term of the office in which the vacancy occurs."

Here again I assert that the Court has erred by treating the constitutional provision as self-executing and by wholly ignoring the statutes enacted to implement the very limited and general constitutional provisions relating to elections. In the language of the opinion quoted above, the Court has ignored the provisions of Section 8 of Article IV of the Constitution which authorizes the legislature to prescribe, "by general laws," the manner in which public officers "shall be elected, appointed and removed."

If the Court is correct in its holding stated in the language of the opinion previously quoted in this dissenting opinion, it necessarily follows that numerous statutes of this state dealing with the manner of filling vacancies in public offices are utterly meaningless and perhaps even unconstitutional.

In the light of the Court's decision in this case that, if a vacancy in an office occurs *at any time* prior to any

general election", it must be filled at the general election, it necessarily follows that, if the death of Sheriff Eller had occurred "at any time" during Monday, November 2, 1970, there would have been a mandatory constitutional requirement that the resulting vacancy in the office of sheriff be filled as a part of the general election held on the following day; and it necessarily follows that if, at that general election, one person had received two "write-in votes" and another person had received one "write-in vote" for the office of sheriff, the person who received two votes would have been duly and legally elected to the office of sheriff for the unexpired portion of the term. If the suppositious case I have stated appears to be ridiculous, it follows that the Court's opinion must be characterized as ridiculous.